# EXHIBIT 12

THE BENCH  DECEMBER 2, 2002 ISSUE

# A PROSECUTOR SPEAKS UP



**By Jeffrey Toobin**

November 25, 2002

The case of the Central Park jogger, a young investment banker who was raped and nearly beaten to death on April 19, 1989, stood for years as a symbol of urban predatory violence. In the days immediately after the crime, five teen-agers admitted to police that they had assaulted the woman; they later pleaded not guilty, but they were all convicted and sentenced to prison terms ranging from five to fifteen years. Then, earlier this year, a man named Matias Reyes, who was serving a long prison sentence in another rape case, came forward and said that he alone had raped the jogger. Reyes's DNA matched semen that was found on the jogger and had never been tied to any suspect. The five men convicted in the case, who have all completed their sentences, recently sued to clear their names. In many quarters, the jogger case has now become a different type of cautionary tale—a symbol of the manipulation of young suspects, the risks of false confessions, and the costs of excessive investigative zeal.

Reyes's confession provoked a round of indignant demonstrations, earnest editorials, and some soul-searching within the criminal-justice establishment. But one person who has not been heard from is Linda Fairstein, the prosecutor who led the sex-crimes unit of the Manhattan district attorney's office at the time of the jogger case. In February, Fairstein left the D.A.'s office after thirty years of service, during which she prosecuted such cases as the preppie murder, against Robert Chambers, and earned a reputation as a fierce advocate for victims. Despite her long career in government, no one ever mistook Fairstein for a dull bureaucrat. She wore flashy clothes, socialized with the city's wealthy and powerful, and developed a profitable sideline as the author of best-selling legal thrillers. Her fifth novel will be published in January.

"It's completely dishonest not to mention the context of the rest of the night of the attacks," Fairstein said last week, in her first public discussion of the new developments in the case. "There were at least four other people attacked in the Park that night. Lots of stuff going on." On the day after the assaults, Fairstein went to the Twentieth Precinct, on the Upper West Side, where detectives and her colleague Elizabeth Lederer were interrogating suspects. "I was there to be the eight-hundred-pound gorilla, to help Elizabeth and the cops get the resources they needed. It became clear as I watched and listened to these kids that a few of them knew each other, but most of them hadn't seen each other before," Fairstein recalled. They interviewed dozens of potential suspects. "Twenty to thirty of them were never charged with anything," she said.

At first, the detectives didn't have much to go on. "A kid would say something like 'a dark-skinned guy who lives on 102nd Street,' " Fairstein said. "And these detectives would go out and find him. I think it was one of the most brilliant police investigations I've ever seen." As for the interrogations themselves, Fairstein has no regrets. "We had to use special 'youth rooms,' " she said. "It was a

much more friendly atmosphere, not the bare interrogation rooms. Nobody under sixteen was talked to until a parent or guardian arrived. Every kid was in an open space, no handcuffs. This was not an Alabama jail where two guys who have been partners for years put a guy in a back room and he doesn't see the light of day for three days. Three of the five went home and had a night's sleep before they were ever taken into custody. For most of them, the substance of their admissions came out within about an hour of the time they came in. The consistency from their original admissions to the police, to their written statements, to the final video is really remarkable."

But what, then, of Reyes's confession and the DNA results? Why wasn't he caught at the time? Fairstein said, "God knows I wish we had databanks of DNA that long ago, because we would have connected him." She continued, "I think Reyes ran with that pack of kids. He stayed longer when the others moved on. He completed the assault. I don't think there is a question in the minds of anyone present during the interrogation process that these five men were participants, not only in the other attacks that night but in the attack on the jogger. I watched more than thirty detectives—black, white, Hispanic guys who'd never met each other before —conduct a brilliant investigation. Remember, I had a lot of cases with comatose victims. They wake up, more often than not. What's the likelihood that a sophisticated group of cops and prosecutors are going to make up a story that she can refute when she wakes up?" (The jogger recovered from her injuries, for the most part, but never remembered anything about the attack.)

Lawyers for the five defendants contest virtually every aspect of Fairstein's interpretation and feel that the convictions have become indefensible. "Reyes is very clear about what he did. His profile is that of a solo artist, and he acted alone," Michael Warren, who represents three of the defendants, said. "Our position is that they were not involved in any assaults in the Park that night. Nobody who was assaulted could identify any of these young boys at the time." Warren disputes Fairstein's characterization of the interrogations. He said, "During the crucial period—the first hours, when they were first caught— my clients were not in the presence of their parents or guardians." Both Robert Morgenthau, the Manhattan district attorney, and the N.Y.P.D. are conducting internal reviews of the case to determine how to respond to the defendants' efforts to clear their names—and, in time, recover damages for their years in prison.

Fairstein stands ready to testify, as she did in the first trial, more than a decade ago. "The defense hasn't come up with anything to exonerate them from the rest of the attacks that night," she said. "Because of the pot of gold at the end of the rainbow, they say they had nothing to do with anything that went on in the Park that night. You have to look at their statements in light of all the other evidence in the case." Fairstein understands that their convictions may have to be vacated, but she is adamant that such a finding shouldn't be taken as proof of their innocence.

Fairstein says that she treated this case like all her others. "I am probably responsible for exonerating more people falsely accused of rape than any fifty prosecutors in the country," she said. "We all did here what we did every day. We were there to find out who did it."

*Published in the print edition of the December 2, 2002, issue.*



*Jeffrey Toobin* *has been a staff writer at The New Yorker since 1993 and the senior legal analyst for CNN since 2002. He is the author of, most recently, "American Heiress" and is at work on a book about Robert Mueller's investigation.*

More:   Comas