**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

LINDA FAIRSTEIN,                          )
                                          )
              Plaintiff,                  )        Case No: 2:20-cv-00180- FtM-66MRM
                                          )
        v.                                )
                                          )
NETFLIX, INC., AVA DUVERNAY,              )
and ATTICA LOCKE,                         )
                                          )
                                          )
              Defendants.                 )

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS AVA DUVERNAY'S AND ATTICA LOCKE'S MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE,**
**JOINT MOTION WITH NETFLIX, INC. TO DISMISS**
**FOR IMPROPER VENUE OR TRANSFER**

---

Edward K. Cheffy                          Andrew T. Miltenberg (*pro hac vice*)
Florida Bar No. 393649                    Kara L. Gorycki (*pro hac vice*)
Rachael S. Loukonen                       NESENOFF & MILTENBERG, LLP
Florida Bar No. 668435                    363 Seventh Avenue, Fifth Floor
Kimberly D. Swanson                       New York, New York 10001
Florida Bar No. 1018219                   (212) 736-4500
CHEFFY PASSIDOMO, P.A.                     amiltenberg@nmllplaw.com
821 Fifth Avenue South                    kgorycki@nmllplaw.com
Naples, FL 34102
(239) 261-9300                            *Trial Counsel for Plaintiff Linda Fairstein*
ekcheffy@napleslaw.com
rloukonen@napleslaw.com
kdswanson@napleslaw.com

*Trial Counsel for Plaintiff Linda Fairstein*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL BACKGROUND .......................................................................... 3

ARGUMENT ...................................................................................................................... 6

   I.   The Court Should Deny Defendants' Rule 12(b)(3) Motion ............................... 6

   II.   This Case Belongs in the Middle District of Florida ...................................... 9

     A.   The Convenience of the Witnesses/Compulsory Process are Neutral Factors .............. 10

     B.   The Locus of Operative Facts is a Neutral Factor ........................................ 13

     C.   Florida is Not an Inconvenient Forum for Defendants ................................. 14

     D.   The Interests of Justice Favor This District ............................................... 15

   III.   This Court May Exercise Personal Jurisdiction Over the Individual Defendants ......... 15

CONCLUSION ................................................................................................................. 20

i

## TABLE OF AUTHORITIES

Cases

*Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725,
    at *32 (M.D. Fla. Sept. 30, 2019)...................................................................... 9

*Bicz v. Colliers Int'l Detroit, LLC,* 2019 WL 4714373, at *7 (M.D. Fla. Sept. 10, 2019) ........... 15

*Capital Corp. Merchant Banking, Inc. v. Corp. Colocation, Inc.*,
    2008 WL 4058014 (M.D. Fla. Aug. 27, 2008)..................................................... 7

*Chapin Revenue Cycle Mgmt., LLC v. JDA Ehealth Sys.*,
    2012 WL 469824, (M.D. Fla. Feb. 13, 2012) ...................................................... 6

*Dean v. Easterling*, 2020 WL 1665482, at* 3-4 (M.D. Fla. Apr. 3, 2020).................................. 20

*Diversified Mgmt. Sols. v. Control Sys. Research, Inc.*, 2016 WL 4256916,
    at *12 (S.D. Fla. May 16, 2016).......................................................................... 16

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 586 (Fla. 2000) ........... 18

*Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000)....................... 10

*Frey v. Minter*, 2017 WL 2172195, at *3 (M.D. Fla. May 17, 2017).......................................... 8

*Goldfarb v. Channel One Russia*, 2020 WL 1048673, at *7 (S.D.N.Y. Mar. 4, 2020)................. 9

*Gubarev v. Buzzfeed, Inc.* 253 F. Supp. 3d 1149, 1164-1165 (S.D. Fla. 2017)...................... 10-15

*Hitchcock v. Scipione*, 2014 WL 12623406, at *1 n. 2 (M.D. Fla. May 30, 2014) ..................... 20

*Internet Solutions Corp. v. Marshall,* 39 So. 3d 1201, 1214-15 (Fla. 2010).............................. 19

*J&M Assocs., Inc. v. Romero*, 488 F. App'x. 373, 376 (11th Cir. 2012).................................... 18

*John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657,
    at *5 (N.D. Ill. Mar. 23, 2020) .......................................................................... 7

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984)..................................................... 15

*Kesner v. Barron's Inc.*, No. 1:19-cv-61370, ECF # 76 .............................................................. 8

*Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) .............................................. 19

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1350 (11th Cir. 2013)...................... 15

*Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735 (Fla. 3d DCA 2006)........... 18, 19

*Mangel v. Daza*, 2019 WL 6716161 ............................................................................................ 7

*Manual v. Convergys Corp.,* 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005)................................... 10

*Mason v. Smithkline Beechum Clinical Labs.*, 146 F. Supp. 2d 1355,
    1361-1362 (S.D. Fla. 2001)................................................................................ 11

*Miller v. Gizmodo Media Grp, LLC*, 383 F. Supp. 3d 1365,
    1375 (S.D. Fla. Apr. 18, 2019)........................................................................... 20

*Murphy v. City of Aventura*, 2008 WL 4540055, at *7 (S.D. Fla. Oct. 10, 2008)................. 16, 17

*Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236,
    1242 (M.D. Fla. 2016)......................................................................................... 9

*Quail Cruises Ship Mgmt., Ltd. v. Agencia De Viagens CVC Tur Limitada*,
    2011 WL 5057203, at *7 (S.D. Fla. Oct. 24, 2011) ............................................ 18

*R & R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 3729309,
    at *5 (M.D. Fla. July 12, 2013) .......................................................................... 15

*Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352,
    1357 (N.D. G.A. 2004)............................................................................ 10, 12, 15

*Sinceno v. Riverside Church in the City of N.Y.*, 2020 WL 1302053,
   *1 (S.D.N.Y. Mar. 18, 2020)....................................................................... 13
*Sky Enters. LLC v. Offshore Design & Drilling Servs.*, 2017 WL 7309871,
   at *11 (M.D. Fla. Dec. 21, 2017) ............................................................... 18
*SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 963 N.E.2d 1226,
   1229-1230 (N.Y. 2012) .................................................................................. 9
*Sterling v. Provident Life and Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1207 (M.D. Fla. 2007) ....... 11
*Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *3 (S.D. Fla. June 28, 2019).................... 10
*Sui v. Wu*, 2011 WL 1396994, at *3 (M.D. Fla. Apr. 13, 2011)............................................ 19, 20
*Thursday LLC v. Klhip Inc.*, 2018 WL 4574877 ............................................................ 6, 7
*Tobinick v. Novella*, 2015 WL 328236 .......................................................................... 7
*Trachtenberg v. FailedMessiah.com*, 43 F. Supp. 3d 198, 204 (E.D.N.Y. Aug. 29, 2014) .......... 9
*Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,
   761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) ....................................... 10, 13, 14
*United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1281-1282 (11th Cir. 2009) ............................... 18
*Weiner v. Podesto*, 2019 WL 7708494 ............................................................................ 7
*Weller v. Flynn*, 312 F. Supp. 3d 706, 717 (N.D. Ill. 2018) .................................................. 7
*Wilcox v. Stout*, 637 So. 2d 335, 336-337 (Fla. 1994) ........................................................ 18

<u>Statutes</u>

28 U.S.C. § 1391(b .................................................................................................... 6
28 U.S.C. § 1404(a) ................................................................................................... 9
28 U.S.C. 1406(a) ...................................................................................................... 9
Florida Statutes, § 48.193(1)(a)(2)............................................................................ 19

<u>Rules</u>

Fed. R. Civ. P. 45 ..................................................................................................... 13
New York Civ. Prac. Law & Rules §§ 302(a)(1), 302(a)(3) ....................................... 9

Plaintiff Linda Fairstein ("Plaintiff" or "Ms. Fairstein") respectfully submits this memorandum of law in opposition to (i) Defendants Ava DuVernay's ("Ms. DuVernay"), Attica Locke's ("Ms. Locke")[1] and Netflix, Inc.'s ("Netflix")[2] motion to dismiss for improper venue or to transfer venue; and (ii) the Individual Defendants' joint motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, Defendants' motions should be denied.[3]

## **INTRODUCTION**

This action arises from Defendants' false and defamatory portrayal of Ms. Fairstein in the limited series, *When They See Us* ("*WTSU*" or the "Series"), which premiered on Netflix's worldwide streaming service on May 31, 2019[4] and continues to stream on Netflix. The action should neither be dismissed nor transferred on the basis of improper venue because it belongs in this District.

Ms. Fairstein, a resident and domiciliary of Florida, has significant ties to this jurisdiction that date back twenty-five years. A well-known, best-selling author of twenty crime novels, a large measure of Ms. Fairstein's success is attributable to book signings, lectures and other events she attended in Florida, as well as the support of Florida-based booksellers and readers. As a direct result of the Series' premiere, Ms. Fairstein suffered significant financial and reputational harm in Florida as a result of her publisher terminating her contract. Since the Series' premiere, Ms. Fairstein has received none of the usual invitations to participate in, or speak at, Florida-based

---

[1] Ms. DuVernay and Ms. Locke will be collectively referred to herein as the "Individual Defendants." Their moving brief (ECF # 26) will be cited herein as "Ind. Defs. Br." Netflix's moving brief (ECF # 28) will be cited herein as "Netflix Br."

[2] These parties will collectively be referred to herein as "Defendants."

[3] Choice of law issues are addressed in Ms. Fairstein's brief in opposition to Netflix's Anti-SLAPP motion. As discussed therein, there is no true conflict of law between California, New York and Florida law that requires the Court to an engage in a choice of law analysis. Even if there were, Florida law applies.

[4] It is undisputed that the Series was released in Florida on the same date and continues to be available for viewing in Florida.

events. She no longer has a career as an author, and she has been subjected to death threats and threats to her personal safety, causing her significant emotional harm.

Defendants misled viewers of the Series to believe that it is a truthful and accurate portrayal of Ms. Fairstein's role in the Central Park jogger case. The Individual Defendants admitted that one purpose of the Series was to hold Ms. Fairstein "accountable" for her "misdeeds." As part of this plan, the Individual Defendants made multiple false and defamatory social media posts, which were accessed in Florida. Ms. Locke, in particular, has relied on her purported research for the Series to launch a social media smear campaign against Ms. Fairstein, because, per Ms. Locke, Ms. Fairstein "deserves all the rage and hate and consequences coming her way." Ms. DuVernay has also claimed that her purported research for the Series supports Defendants' false and defamatory portrayal of Ms. Fairstein.

Defendants erroneously assert that this action should be dismissed, or transferred to the United States District Court for the Southern District of New York ("SDNY"). SDNY is not a proper venue because it *does not* have personal jurisdiction over Ms. Locke.

Even if SDNY were a proper venue, transfer to that district is not warranted because relevant factors do not *clearly outweigh* Ms. Fairstein's choice of this forum. No party to this action resides in New York. Key witnesses reside in at least six different jurisdictions. Several New York witnesses are willing to testify at trial in this District. Defendants' work on *WTSU* occurred in three different jurisdictions. Significantly, Florida has a special interest in exercising jurisdiction over those who commit torts within its territory.

Apart from Defendants' venue challenge, the Individual Defendants argue that the Court lacks personal jurisdiction over them. Though they concede that Ms. Fairstein's conspiracy claim could give rise to personal jurisdiction, they argue that the claim has not been adequately pled.

One need only review the allegations of the Complaint *in toto* to see that Ms. Fairstein has pled a plausible claim for conspiracy to commit defamation against the Individual Defendants. Consequently, this Court has personal jurisdiction over them. The Individual Defendants' false and defamatory Twitter posts also provide an independent basis for the Court's exercise of personal jurisdiction.

## RELEVANT FACTUAL BACKGROUND

*WTSU* addresses the arrests, trials and convictions of five young men of color—Kharey (aka Korey) Wise ("Mr. Wise"), Raymond Santana ("Mr. Santana"), Kevin Richardson ("Mr. Richardson"), Yusef Salaam ("Mr. Salaam") and Antron McCray ("Mr. McCray") (collectively "The Five"). The Series further addresses the vacatur of their convictions in 2002. *Id.* ¶¶ 4-5. The purpose of this action is not to retry the case against The Five, and Ms. Fairstein's claims are decidedly not related to any narratives put forth by The Five within the Series. The film scenes cited in the Complaint "do not concern any events or situations in which any of The Five were present, and cannot be explained or justified as portraying their account of what happened." *Id.* ¶ 231.[5]

This action concerns Defendants' false depiction of events concerning Ms. Fairstein. *Id.* ¶¶ 44-130.[6] Defendants intentionally, falsely portrayed Ms. Fairstein as the singular mastermind behind a racist plot to convict innocent young men of color at any cost, and without substantial evidence. *Id.* Viewers believed this portrayal to be true because Defendants marketed and promoted the Series as a true story and then chose not to correct any of the public's misperceptions

---

[5] This issue is further addressed in Plaintiff's opposition to Netflix's Rule 12(b).
[6] With her opposition briefing, Plaintiff has submitted an appendix of the documents referenced in the Complaint which is incorporated herein by reference.

about Ms. Fairstein that arose from the Series. Compl. ¶¶ 165-257. On the contrary, Defendants encouraged these misperceptions. Compl. ¶¶ 145-147, 152-257.

Ms. Fairstein is a lawyer, former prosecutor and author. Compl. ¶ 32. From 1972 until 2002, Ms. Fairstein served in the office of the New York County District Attorney, where she was the chief of the County's Sex Crimes Prosecution Unit for twenty-six years. *Id.* Ms. Fairstein has served as a legal consultant, received many awards for her legal work and advocacy and, for decades, served on the boards of a number of non-profit organizations. *Id.* ¶¶ 33-34. From 1993 until March 2019, Ms. Fairstein authored and published twenty-four books, including twenty best-selling crime novels. *Id.* ¶ 35.

Ms. Fairstein is a Florida resident and domiciliary. *See* Affidavit of Linda Fairstein, sworn to on May 27, 2020, ECF No. 35 ("Fairstein Aff.), ¶¶ 1-13. Ms. Fairstein has owned a home in Florida since 2017 and, long before then, had substantial ties to the State. *Id.* ¶¶ 1-16. She declared Florida her domicile in September 2019, and intends to reside in Florida for the rest of her life. *Id.* ¶¶ 2, 11. A substantial number of Ms. Fairstein's books have been sold in Florida, which helped launch her onto a number of national bestseller lists. *Id.* ¶ 14. Per Ms. Fairstein, her "time spent in Florida over the last twenty-five years promoting [her] books and making connections in the literary world have been instrumental to [her] success as an author." *Id.* ¶ 16. Notably, the Series directly attacks Ms. Fairstein's career as an author. Compl. ¶ 128. The Individual Defendants have also publicly attacked Ms. Fairstein's career as an author. Compl. ¶¶ 153, 155, 160, 178, 193.

After *WTSU* premiered in May 2019, Ms. Fairstein suffered direct reputational, financial and emotional harm, including significant injury in Florida. Fairstein Aff. ¶¶ 16-18. Immediately after the Series premiered, Ms. Fairstein's longtime U.S. and U.K. publishers, and literary agent, terminated their relationships with her. *Id.* ¶¶ 16-18; Declaration of Linda Fairstein, dated June 29,

2020, ("Fairstein Decl."), ¶¶ 7-8, ECF #42; Compl. ¶¶ 241-246. Florida booksellers are unable to order, or sell, new copies of Ms. Fairstein's novels because they are no longer available from the publisher. Declaration of Chad Leonard ("Leonard Decl."), dated June 19, 2020; Declaration of Carolyn Madden ("Madden Decl."), dated June 17, 2020; Declaration of Joanne Sinchuk ("Sinchuk Decl."), dated June 15, 2020.

As a result of being falsely portrayed in the Series as a racist and unethical prosecutor who violated the laws, the United States Constitution and her professional obligations, Ms. Fairstein has also suffered severe mental and emotional harm. Fairstein Aff. ¶ 19. She has also been subjected to death threats and threats to her physical safety. Compl. ¶¶ 236-237.

Netflix does not challenge personal jurisdiction. Ind. Defs. Br. at 2, n. 1. The Individual Defendants are residents of California. DuVernay Decl., ECF # 26-1, ¶ 2; Locke Decl., ECF # 26-2, ¶ 3. Defendants collectively wrote and developed the Series in California. Ind. Defs. Br. at 23. Ms. Locke researched and wrote portions of the script for the Series in California. Locke Decl. ¶¶ 4-5. Ms. DuVernay researched the script for the Series in California, New York and Georgia. DuVernay Decl. ¶ 4. She wrote the script in California and New York. *Id.* She directed the Series in New York. *Id.*

Netflix originally categorized the Series as a documentary. Compl. ¶ 168. Defendants marketed and promoted *WTSU* as a true story even though they knew that their portrayal of Ms. Fairstein in the Series bore no relationship to her actual role in the case against The Five. *Id.* ¶¶ 165-223. The Individual Defendants each made public statements to the effect that the purpose of *WTSU* was to hold Ms. Fairstein "accountable" for her "misdeeds." *Id.* ¶¶ 163, 181-183. Relying on the Series, Ms. Locke made a number of public statements against Ms. Fairstein which were clearly intended to incite hatred and ridicule against her. Compl. ¶¶ 152-164, 187-199. Ms.

DuVernay made similar statements. Compl. ¶¶ 178, 181-183, 185-186. The Individual Defendants' Twitter posts regarding Ms. Fairstein were accessed in Florida. Declaration of Lance Ribacoff, dated June 24, 2020 ("Ribacoff Decl."), ¶¶ 5-6, ECF #43.

Key liability witnesses in this action reside in multiple jurisdictions, including Florida, California, Ohio and New York. Patricia Meili ("Ms. Meili"), Arthur "Tim" Clements III ("Mr. Clements"), Elizabeth Lederer ("Ms. Lederer"), Eric Reynolds ("Mr. Reynolds") and Robert Nugent ("Mr. Nugent") will voluntarily testify at trial even though they reside outside this District. *See* Declaration of Patricia Meili ("Meili Decl."), dated June 16, 2020; Declaration of Arthur "Tim" Clements ("Clements Decl."), dated June 15, 2020; Declaration of Elizabeth Lederer, dated June 15, 2020 ("Lederer Decl."), and Declaration of Eric Reynolds, dated June 16, 2020 ("Reynolds Decl.").

## ARGUMENT

### I.    The Court Should Deny Defendants' Rule 12(b)(3) Motion[7]

The Middle District of Florida is the proper venue[8] for this action because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b); Compl. ¶ 30. A plaintiff is not required to select the venue with the ***most*** substantial nexus to the dispute. *Thursday LLC v. Klhip Inc.*, 2018 WL 4574877, at *1 (M.D. Fla. July 11, 2018); *Chapin Revenue Cycle Mgmt., LLC v. JDA Ehealth Sys.*, 2012 WL 469824, at *4 (M.D. Fla. Feb. 13, 2012). In deciding a Rule 12(b)(3) motion, the Court accepts the facts alleged in the Complaint as true, and draws all reasonable inferences and resolves all factual conflicts in favor of the plaintiff. *Capital Corp. Merchant Banking, Inc. v. Corp. Colocation, Inc.*, 2008 WL

---

[7] In its Rule 12(b)(6) motion, Netflix has asked the Court to first consider the Defendants' motion to dismiss/transfer for improper venue. Netflix Br. at 1 n. 1. Accordingly, Ms. Fairstein addresses this motion first.

[8] Defendants erroneously state that the "Southern District of Florida is an improper venue." Ind. Defs. Br. at 5, 13. Plaintiff assumes that this argument is directed at the Middle District of Florida.

4058014, at *1 (M.D. Fla. Aug. 27, 2008). The Court may also consider matters outside the pleadings. *Id.*

In defamation cases, venue is proper in the district where the injured party resides and the defamatory statements were published. *Weiner v. Podesto*, 2019 WL 7708494, at *7 (S.D. Fla. Aug. 2, 2019); *Tobinick v. Novella*, 2015 WL 328236, at *2 (S.D. Fla. Jan. 23, 2015); *Capital Corp.*, 2008 WL 4058014, at *3. *See Chapin*, 2012 WL 469824, at *4. The plaintiff need only show Florida residency and that the defendant sent the defamatory material into Florida.[9] *Weiner*, 2019 WL 7708494, at *7; *Thursday*, 2018 WL 4574877, at *2-3. Ms. Fairstein is a resident of Florida. Fairstein Aff., ¶¶ 1-13. It is undisputed that, as of May 31, 2019, *WTSU* was, and still is, streaming in Florida. Defendants wrote, developed and jointly published the Series. Ind. Defs. Br. at 23.[10] The Individual Defendants also advertised and promoted the Series through their social media accounts, including in Florida, (Compl. ¶¶ 299-305, 322-327; *see generally* Ribacoff Decl.), and published defamatory social media posts about Ms. Fairstein that were accessed in Florida. Ribacoff Decl. ¶¶ 5-6, Ex. 4.[11] Ms. Fairstein has suffered significant mental and emotional harm,

---

[9] As set forth in Ms. Fairstein's opposition to Defendants' Rule 12(b)(6) motion and Netflix's Anti-SLAPP motion, she has plausibly alleged defamation claims against Defendants.

[10] The Individual Defendants argue that because they were not responsible for "distribution" of *WTSU* the Court does not have personal jurisdiction over them. Ind. Defs. Br. at 6-7. One need not be responsible for the "distribution" of defamatory material in order to be held liable for defamation, including the "publication" of that material. *See Mangel v. Daza*, 2019 WL 6716161, at * 3 (M.D. Fla. Dec. 10, 2019) (defendant published defamatory statements through local media). Here, the Individual Defendants published the defamatory material to Netflix when writing the Series, which they knew would be, and it was, broadcasted by Netflix. In addition, and as addressed fully below, Defendants conspired to publish the false and defamatory Series, including in Florida. *Weller v. Flynn*, 312 F. Supp. 3d 706, 717 (N.D. Ill. 2018), is inapposite because it concerned copyright infringement and, unlike the *Weller* defendants who were dismissed from that action, the Individual Defendants are admittedly more than producers of *WTSU*. They made "creative contributions to the film's storyline," "exercised control over the film's production" and played a role in "advertising the film" by promoting it through their social media accounts and in interviews with national publications. *See* DuVernay Decl. ¶¶ 3-5; Locke Decl. ¶¶ 4-5, Compl. ¶¶ 156, 171-199. *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657, at *5 (N.D. Ill. Mar. 23, 2020), did not address the issue of publication versus distribution, nor was a conspiracy claim alleged in *Reid*.

[11] Even if the Court adopts Defendants' argument that the focus, here, should be on Defendants' relevant activities, these facts show that venue is proper in this District. *See* Ind. Defs. Br. at 14. Moreover, Defendants' activities did not take place in any one venue. *See* DuVernay Decl. ¶ 4 (California, New York and Georgia).

resulting from Defendants' false and defamatory portrayal of her in *WTSU*. Fairstein Aff. ¶ 19. These injuries are continuing because the Series remains available for viewing on Netflix.

Plaintiff's "publishing business" is not, as Defendants contend, "centered in New York." *See* Ind. Defs. Br. at 15.[12] Nor is Ms. Fairstein's reputation limited to her career as a New York prosecutor. *Id.* at 14-15. After all, Defendants ensured that the Series also attacked Ms. Fairstein's career as a crime novelist. Compl. ¶ 128. Ms. Fairstein has suffered significant injury to her longstanding reputation and career in Florida, dating back to the Series' premiere and continuing through the present. Fairstein Aff. ¶¶ 14-19. After her U.S. publisher, Dutton, terminated its contract with Ms. Fairstein on June 6, 2019, new copies of Ms. Fairstein's crime novels, published through Dutton, were no longer available for sale in Florida. Fairstein Aff. ¶¶ 17-18; Leonard Decl. ¶¶ 3-4; Madden Decl. ¶ 3; Sinchuk Decl. ¶¶ 4-5. Since *WTSU* premiered, Ms. Fairstein has not been asked to participate in any Florida-based events. Fairstein Aff. ¶ 16.

Defendants are also incorrect that the harm resulting from Ms. Fairstein losing her board positions is centered in New York because the Florida media reported on this matter. Compl. ¶¶ 234, 252 n. 186.[13] Defendants are wrong that "not one substantial event occurred here" and that the "brunt of any harm occurred in New York, not Florida," and their Rule 12(b)(3) motion to dismiss should be denied. *See* Ind. Defs. Br. at 13-15.

---

[12] Ms. Fairstein does not run any publishing "businesses" out of New York. She is her business. It is a common practice for individuals to form entities for business purposes and that is what Ms. Fairstein did. The New York entities referenced by Defendants are no longer operational. Fairstein Decl. ¶¶ 3-6.

[13] Ms. Fairstein does not dispute that she is only licensed to practice law in New York. *See* Ind. Defs. Br. at 15; Fairstein Decl., ¶ 2. The cases cited by Defendants in this regard are readily distinguishable from the present facts. Ind. Defs. Br. at 15. In *Kesner v. Barron's Inc.*, No. 1:19-cv-61370, ECF # 76, the plaintiff's injuries related solely to his practice of law in New York and "all substantial events" occurred in New York. *Id.* at 4. In *Frey v. Minter*, 2017 WL 2172195, at *3 (M.D. Fla. May 17, 2017), the plaintiff's damages arose solely from his career as an attorney (in Georgia) and the defamatory statements at issue were published in Georgia.

## II.     This Case Belongs in the Middle District of Florida

The Court should deny Defendants' motion to transfer venue because the SDNY *is not* a "district…where [this action] might have been brought." 28 U.S.C. § 1404(a).[14] Unlike this Court, the SDNY *does not* have personal jurisdiction over Ms. Locke.[15] Defendants argue that "all Defendants are subject to personal jurisdiction in New York based on their activities *in writing about* the New York-focused series and residents." Ind. Defs. Br. at 17 (emphasis added). But simply writing about New York from outside the jurisdiction *will not* confer personal jurisdiction under New York's long-arm statute. Indeed, unlike Florida's long-arm statute, New York's statute expressly excepts defamation from the tortious acts that can give rise to long-arm jurisdiction. New York Civ. Prac. Law & Rules §§ 302(a)(1), 302(a)(3). Under New York law, a defendant must have "created, researched, written, developed or produced defamatory material *in* New York" in order to be subject to personal jurisdiction. *Goldfarb v. Channel One Russia*, 2020 WL 1048673, at *7 (S.D.N.Y. Mar. 4, 2020) (emphasis added). *See Trachtenberg v. FailedMessiah.com*, 43 F. Supp. 3d 198, 204 (E.D.N.Y. Aug. 29, 2014); *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 963 N.E.2d 1226, 1229-1230 (N.Y. 2012). Ms. Locke researched and wrote the Series exclusively in California. Locke Decl. ¶ 5.

Assuming *arguendo*, that the Court finds that SDNY is a proper venue, it is not more convenient and transfer would not serve the interests of justice because, as detailed below, relevant factors do not clearly outweigh Ms. Fairstein's choice of forum. *Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725, at *32 (M.D. Fla. Sept. 30, 2019). *See Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1242 (M.D. Fla. 2016); *Eye Care Int'l, Inc. v.*

---

[14] For this reason, Defendants' request that the case be dismissed or transferred pursuant to 28 U.S.C. 1406(a) should also be denied. *See* Ind. Defs. Br. at 16, n. 8.

[15] *See infra* Point III.

*Underhill*, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000). The factors to be weighed by the Court include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof;[16] (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties;[17] (7) a forum's familiarity with the governing law;[18] (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005). Defendants fall short of meeting their substantial burden to overcome the strong presumption in favor of Ms. Fairstein's choice of forum.

### A.    The Convenience of the Witnesses/Compulsory Process are Neutral Factors

"When weighing the convenience of the witnesses…the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Stokes v. Markel Am. Ins. Co*., 2019 WL 8017457, at *3 (S.D. Fla. June 28, 2019). "The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." *Gubarev*, 253 F. Supp. 3d at 1164; *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.,* 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010). In a defamation action, material witnesses "are those which have information regarding the liability of defendant." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. G.A. 2004). "The witnesses which will determine liability are those that can shed light on the issues of falsity of the [defamation], and the … malice of the Defendant in making the allegedly defamatory statement." *Id.* at 1357.

---

[16] The parties are in agreement that the location of relevant documents is a neutral factor. Ind. Defs. Br. at 25. *See Gubarev v. Buzzfeed, Inc.* 253 F. Supp. 3d 1149, 1164-1165 (S.D. Fla. 2017).

[17] The parties are in agreement that this factor is neutral, (Ind. Defs. Br. at 24), though it should be noted that Netflix has fare more resources available to litigate this case than Ms. Fairstein. All parties have counsel in New York and Florida. Ms. Fairstein's New York property has been on the market since September 2019 and, thus, is not a consideration in evaluating this factor. As fully detailed herein, none of the factors supports transfer to the SDNY.

[18] As detailed at length in Plaintiff's opposition to Netflix's Anti-SLAPP motion, Florida law applies.

Where "it appears inevitable that out of-state-witnesses will be called whether [a] case remains…in Florida or is transferred to the Southern District of New York" this factor *will not* weigh in favor of transfer. *Gubarev*, 253 F. Supp. 3d at 1164. *See also Sterling v. Provident Life and Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1207 (M.D. Fla. 2007). Here, the key witnesses in the case reside in no single jurisdiction, rendering this factor neutral:[19]

- Defense witnesses Cindy Holland, Netflix's Vice President of Original Content,[20] Ms. DuVernay and Ms. Locke live in California. DuVernay Decl. ¶ 2; Locke Decl. ¶ 3.

- Ms. Fairstein and her husband live in Florida. Fairstein Aff. ¶ 20.

- Mr. Clements resides in Ohio. Clements Decl. ¶ 1. Mr. Clements assisted Ms. Lederer with investigating and prosecuting the case against The Five and has material information concerning the false portrayal of Ms. Fairstein in *WTSU*. Compl. ¶¶ 40, 82 n. 49, 85, 86 n. 53, 92 n. 55, 116 n. 71, 123 nn. 88, 91. He is willing to travel to Florida to testify at trial. Clements Decl. ¶ 2.

- Ms. Lederer lives in New York. She was responsible for the prosecutorial investigation and prosecution of the case against The Five. *See, e.g.*, Compl. ¶¶ 39, 40, 82, 85. Ms. Lederer has material information concerning the false portrayal of Ms. Fairstein in *WTSU*. Ms. Lederer is willing to travel to Florida to testify at trial. Lederer Decl. ¶ 2.

- Mr. Reynolds lives in New York. He was involved in the arrests and questioning of a number of young men involved in the incidents in Central Park on April 19-20, 1989. Compl. ¶¶ 71-72, 100-101. He has material information concerning the false portrayal of Ms. Fairstein in *WTSU*. *Id.* Mr. Reynolds is willing to travel to Florida to testify at trial. Reynolds Decl. ¶ 2.

- Mr. Nugent, who was one of the lead detectives in the NYPD investigation, lives in New York. He has material information about the creation of a timeline for the Central Park jogger case. Compl. ¶ 85. He is willing to travel to Florida to testify at trial. Nugent Decl. ¶ 2.

- Former ADA Nancy Ryan lives in New York. Defendants have not asserted that Ms. Ryan would be inconvenienced by testifying in Florida or that she is unwilling to appear.[21]

---

[19] Out-of-state witnesses can give deposition testimony and could also give live video testimony for trial. FRCP 45(c). *See Sterling*, 519 F. Supp. 2d at 1207-1208 ("Since there has been no showing that the witnesses cannot be effectively presented by deposition, transfer would simply shift inconvenience to [the plaintiff].")

[20] https://www.fastpeoplesearch.com/cynthia-holland_id_G-5470715880320000294

[21] *See Mason v. Smithkline Beechum Clinical Labs.*, 146 F. Supp. 2d 1355, 1361-1362 (S.D. Fla. 2001). As noted by Defendants, ADA Peter Casolaro is "mentioned in the Complaint in connection with [one] scene." Ind. Defs. Br. at 18; Compl. ¶ 127. John Fried is also referenced in just two paragraphs of the Complaint and does not appear in the

- Former NYPD Detective Humberto Arroyo lives in Florida. He was lead detective in the original investigation of the case against The Five, testified in the trials against the Five, and has material information concerning the false portrayal of Ms. Fairstein in *WTSU*. Compl. ¶¶ 64 nn. 28-29, 98 n. 59, 82 n. 48, 101 n. 66; 105 n. 69; Fairstein Aff. ¶ 20.

Ms. Fairstein's damages witnesses are not exclusive to New York and those who are should be accorded far less weight than the liability witnesses. *Ramsey*, 323 F. Supp. 2d at 1357. Ms. Fairstein suffered significant damages in Florida. She has also suffered damages on an international level due to the cancellation of her U.K. publishing contract. Compl. ¶ 245; Fairstein Decl. ¶¶ 7-8. Witnesses concerning that contract are located in the U.K. Fairstein Decl. ¶ 8.

Messrs. Wise, Santana, Richardson, Salaam and McCray should not be considered in the Court's analysis because the scenes in *WTSU* about which Ms. Fairstein complains would not have been witnessed by any of The Five. Compl. ¶¶ 44-130, 231. While The Five are the "focus of the film," they are decidedly not the focus of Ms. Fairstein's case. Ind. Defs. Br. at 19. Mr. Richardson even testified that "he did not recall seeing Ms. Fairstein at any precinct." *Id.* ¶ 106. To the extent that Defendants expect Mr. Richardson to testify about this issue (they have not made this representation), he is not a New York resident. DuVernay Decl. ¶ 11. Messrs. Salaam, Santana and McCray live in Georgia, which is closer to Florida than New York. DuVernay Decl. ¶ 12.

Defendants' vague assertion that "several of the men's family members may also be important witnesses" is too speculative to support a transfer. *Gubarev,* 253 F. Supp. 3d at 1166. As is the speculation that Mr. Salaam's mother "will likely be important were this case to proceed to discovery," because, even if her testimony is needed, nothing will preclude Defendants from

---

Series. Compl. ¶¶ 39, 91. Defendants have not demonstrated that these individuals are key witnesses. Nor have they asserted that they would be inconvenienced or unwilling to testify at trial. Defendants have provided no specific records confirming that Robert Honeyman or Glen Whelpley live in New York. *See* Giannini Decl. ¶¶ 15-16, 18. Mr. Whelpley did not interact with Ms. Fairstein during the investigation or prosecution of The Five and, accordingly, would not be a key witness. Compl. ¶ 80. In any event, Mr. Whelpley's testimony would be duplicative of Mr. Reynold's. *See* Compl. ¶ 71.

taking her deposition. Fed. R. Civ. P. 45; *Gubarev,* 253 F. Supp. 3d at 1166. Defendants' assertion that David Nocenti "may be a witness" is also too speculative to be considered by the Court. *Gubarev,* 253 F. Supp. 3d at 1165-66.[22]

Defendants' speculative assertion that the "original criminal defense attorneys may have information relevant to Fairstein's claims" does not support that these individuals are key witnesses. Ind. Defs. Br. at 20. None of the defense attorneys would have personal knowledge about the scenes cited in the Complaint. Compl. ¶¶ 44-130.

The COVID-19 pandemic is also a consideration, as it has required attorneys and courts to adopt new procedures, including conducting virtual depositions, hearings and trials. *See* March 19, 2020 Order, Middle District of Florida, Fort Myers Division; *Sinceno v. Riverside Church in the City of N.Y.*, 2020 WL 1302053, *1 (S.D.N.Y. Mar. 18, 2020). Due to the safety risk posed by the pandemic, it is becoming commonplace for depositions and trial testimony to be taken with witnesses and counsel appearing in different locations.

### B.    The Locus of Operative Facts is a Neutral Factor

"The locus of operative facts has been interpreted as the place where events and actors material to proving liability are located." *Gubarev,* 253 F. Supp. 3d at 1165-66. Where, as here, there is no single locus of operative facts, this factor is neutral and does not support a transfer. *Gubarev,* 253 F. Supp. 3d at 1166; *Trinity,* 761 F. Supp. 2d at 1329. The Individual Defendants reside in California. DuVernay Decl. ¶ 2; Locke Decl. ¶ 3. Defendants "wrote and developed" *WTSU* in California. Ind. Defs. Br. at 23. Ms. DuVernay worked on the Series in California, New

---

[22] Ms. Fairstein makes no claim with respect to Defendants' depiction of her interaction with Ms. Salaam at the stationhouse because those scenes could be perceived as portraying Mr. Salaam's point of view. Given that this exchange was not cited in the Complaint, neither Ms. Salaam nor Mr. Nocenti are key witnesses.

York and Georgia. DuVernay Decl. ¶ 4. As discussed above, key non-party witnesses are located in a number of jurisdictions.

Because this case involves internet defamation, the location where the defamatory statements were published is also relevant to the Court's analysis. *See Gubarev,* 253 F. Supp. 3d at 1166. Defendants do not dispute that *WTSU* was published, and accessed in Florida. The Individual Defendants also published defamatory social media posts that were accessed in Florida. Ribacoff Decl., Ex. 4. As detailed above, Defendants are incorrect in their assertion that all of Ms. Fairstein's damages occurred in New York.

### C.      Florida is Not an Inconvenient Forum for Defendants

"[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity*, 761 F. Supp. 2d at 1328-29. Ms. Fairstein is a Florida resident. *See generally* Fairstein Aff. She is also at an age which poses a risk that she could contract COVID-19. Fairstein Decl. ¶ 1. Ms. Fairstein is also in the process of selling the New York cooperative apartment that she owns with her husband, which has been on the market since September 2019. Fairstein Aff. ¶ 12. Thus, traveling to New York would not be convenient for Ms. Fairstein.

Netflix is registered to do business in Florida, regularly conducts business in Florida, and has a "production presence" in Florida. Compl. ¶ 23. Ms. Locke has no ties to New York. Locke Decl. ¶ 3. Ms. DuVernay can just as easily "travel to" Florida as she does to New York. DuVernay Decl. ¶ 8. Defendants' counsel has a significant presence in Florida.

### D.    The Interests of Justice Favor This District[23]

Florida, not New York, has a "monumental interest in this case," (*See* Ind. Defs. Br. at 22),

because Florida has an especial interest in exercising personal jurisdiction over those who commit

torts within its territory. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984). This interest

extends to libel actions because false statements of fact harm both the subject of the falsehood ***and***

the readers, or in this case viewers, of the statement. *Id.*; *Gubarev*, 253 F. Supp. 3d at 1152. As

discussed above, Ms. Fairstein is a Florida citizen who has been defamed in Florida. Florida

citizens have been fed lies about Ms. Fairstein through Defendants' tortious conduct in, and

directed at, Florida.[24]

### III.    This Court May Exercise Personal Jurisdiction Over the Individual Defendants

A plaintiff must allege a prima facie case of personal jurisdiction. *Louis Vuitton Malletier,*

*S.A. v. Mosseri*, 736 F. 3d 1339, 1350 (11th Cir. 2013). The plaintiff's allegations are accepted as

true, unless contested by a defendant's affidavit which contains specific factual declarations that

rebut personal jurisdiction. *See id.*; *R & R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 3729309,

at *5 (M.D. Fla. July 12, 2013). If jurisdiction is contested, "the court is obliged to deem all facts

alleged by the plaintiff to be admitted to the extent they are uncontroverted by the defendant and

to draw all reasonable inferences in the light most favorable to the plaintiff." *Bicz v. Colliers Int'l*

*Detroit, LLC,* 2019 WL 4714373, at *7 (M.D. Fla. Sept. 10, 2019). Here, Ms. Fairstein has

established a prima facie case of personal jurisdiction arising from her claim that the Individual

Defendants conspired with Netflix to defame her. The Individual Defendants have not rebutted

personal jurisdiction on this ground and, accordingly, their motion to dismiss should be denied.

---

[23] Defendants have conceded that this District is a more efficient district than SDNY because cases reach trial faster in this District. Ind. Defs. Br. at 25 n. 15.

[24] Defendants' rely on *Ramsey*, 323 F. Supp. 2d 1352, which is inapposite. Unlike the present case, in *Ramsey*, the plaintiffs were not residents of the district, all of the key witnesses and evidence were located in Colorado and it was undisputed that the defamatory report at issue was researched, written and produced exclusively in Colorado.

The Individual Defendants concede that their participation in a conspiracy with Netflix would give rise to personal jurisdiction over them as co-conspirators, but argue that Ms. Fairstein has failed to plausibly allege a conspiracy. Ind. Defs. Br. at 8-9. Under Florida law, a civil conspiracy requires 1) an agreement between two or more parties; 2) to do an unlawful act or to do a lawful act by unlawful means; 3) the doing of some overt act in furtherance of the conspiracy; and 4) damage to the plaintiff as a result of the acts done under the conspiracy. *Diversified Mgmt. Sols. v. Control Sys. Research, Inc.*, 2016 WL 4256916, at *12 (S.D. Fla. May 16, 2016). A cause of action for civil conspiracy will only lie if the plaintiff pleads an "actionable underlying tort or wrong." *Id.* Here, the actionable underlying tort is defamation. Compl. ¶¶ 375-382.[25] A plaintiff "does not have to allege that each participant in the conspiracy committed every element of the underlying tort. The essence of a civil conspiracy is that one conspirator is being held liable for the actions of another co-conspirator." *Murphy v. City of Aventura*, 2008 WL 4540055, at *7 (S.D. Fla. Oct. 10, 2008).

An agreement between two or more parties can be shown by circumstantial evidence. *Diversified Mgmt.*, 2016 WL 4256916, at *12. The Individual Defendants make the conclusory assertion that there can be no conspiracy because they simply "had contracts with Netflix to write and produce the Series." Ind. Defs. Br. at 8. These contracts have not been disclosed and the Individual Defendants have strenuously objected to providing jurisdictional discovery. *See* ECF #36. They cite no law which supports the inference that parties to a contract cannot participate in a conspiracy. Defendants further concede that they together wrote and developed *WTSU*. Ind. Defs. Br. at 23. Ms. Fairstein has also plausibly alleged an agreement amongst the Defendants to defame her. As alleged in the Complaint: 1) Netflix creates, develops and produces original content in

---

[25] As fully detailed in her opposition to Netflix's Rule 12(b)(6) motion to dismiss, Ms. Fairstein has also plausibly alleged defamation claims against the Defendants. Ms. Fairstein incorporates that brief herein.

collaboration with writers, directors and production companies. (Compl. ¶ 23); 2) the Individual Defendants co-wrote the Series in collaboration with Netflix's Vice President of Original Content (*Id.* ¶¶ 2-3, 24-25, 149, 177, 186, 197-199, 221-222); 3) Defendants collaboratively wrote, produced and published *WTSU* with the intent to target and defame Ms. Fairstein (*Id.* ¶¶ 44-130, 144, 164, 185, 195, 198, 221, 230, 377); and 6) Netflix and Ms. DuVernay relied on biased sources when creating the Series and ignored Ms. Fairstein's warnings about republication (*Id.* ¶¶ 138-144, 144-151, 220-222.

Ms. Fairstein has also alleged acts in furtherance of the conspiracy to defame her: 1) Netflix released *WTSU* to its worldwide streaming service on May 31, 2019, including in Florida (*Id.* ¶¶ 1-2);[26] 2) the Individual Defendants caused the Series to be published nationwide on Netflix on May 31, 2019, including in Florida (*Id.* ¶¶ 259, 276, 294, 316);[27] 3) Cindy Holland's public statements about the Series demonstrate that Netflix intended to send a message to the public that *WTSU* is a documentary as opposed to a dramatization (*Id.* ¶¶ 222, 346); 4) Netflix originally categorized the Series as a documentary (Compl. ¶ 168; Gorycki Decl., Ex. 1); 5) Defendants marketed and promoted *WTSU* as a true story even though they knew that their portrayal of Ms. Fairstein in the Series bore no relationship to her actual role in the case against The Five (Compl. ¶¶ 165-223); 6) Netflix prominently featured Felicity Huffman, portraying Ms. Fairstein, in a teaser for *WTSU*, ordering a roundup of "thugs" (Compl. ¶¶ 103, 165); 7) Netflix prominently featured Ms. Huffman, as Ms. Fairstein, in the official trailer for the Series saying "every black male in the park last night is a suspect. I need all of them" (Compl. ¶ 166); 8) the Individual

---

[26] Netflix's publication of the Series would be enough to hold Ms. DuVernay and Ms. Locke liable as co-conspirators. *See Murphy*, 2008 WL 4540055, at *7 (holding that the plaintiff alleged a conspiracy to defame against a particular defendant even though it was not alleged that she "published any defamatory statements regarding [the plaintiff] or that her actions contributed to the publication of defamatory statements").

[27] As discussed *supra* note 10, one need not have distributed the film to "publish" it.

Defendants made public statements to the effect that the purpose of *WTSU* was to hold Ms. Fairstein "accountable" for her "misdeeds" (Compl. ¶¶ 163, 178, 181-183, 188, 191, 195, 197); 9) relying on the Series' false and defamatory portrayal of Ms. Fairstein, Ms. Locke made a number of public statements which were clearly intended to incite hatred and ridicule against Ms. Fairstein (Compl. ¶¶ 152-164, 187-199); and 10) Ms. DuVernay made similar statements (Compl. ¶¶ 178, 181-183, 185-186).

Ms. Fairstein has also alleged damages. Defendants' collaboration in creating the Series, publication of the Series, marketing and promotion of the Series as a true story, and failure to correct the public's misperception of Ms. Fairstein's role in the case against The Five achieved Defendants' purpose of destroying Ms. Fairstein's reputation and causing her irreparable injury. Compl. ¶¶ 232-257. *See generally* Fairstein Aff. & Fairstein Decl.

Florida has adopted a "conspiracy theory of personal jurisdiction" pursuant to which courts have long-arm personal jurisdiction over "any alleged conspirator where any other co-conspirator commits a tortious act in Florida in furtherance of the conspiracy, ***even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida***." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1281-1282 (11th Cir. 2009) (emphasis added). *See J&M Assocs., Inc. v. Romero*, 488 F. App'x. 373, 376 (11th Cir. 2012); *Sky Enters. LLC v. Offshore Design & Drilling Servs.,* 2017 WL 7309871, at *11 (M.D. Fla. Dec. 21, 2017); *Quail Cruises Ship Mgmt., Ltd. v. Agencia De Viagens CVC Tur Limitada*, 2011 WL 5057203, at *7 (S.D. Fla. Oct. 24, 2011); *Wilcox v. Stout*, 637 So. 2d 335, 336-337 (Fla. 1994); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735 (Fla. 3d DCA 2006). Directing a conspiracy towards Florida establishes sufficient minimum contacts to satisfy due process. *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd*., 752 So. 2d 582, 586 (Fla. 2000); *Machtinger*, 937 So. 2d at

736. Because Ms. Fairstein has plausibly alleged that the Individual Defendants conspired with Netflix to defame her, and it is undisputed that there is personal jurisdiction over Netflix, the Court has personal jurisdiction over the Individual Defendants.

The Individual Defendants have put forth no evidence demonstrating that their use of Twitter to defame Ms. Fairstein provides no basis for personal jurisdiction. Ms. DuVernay has over two million Twitter followers, 24,352 of whom are located in Florida. Three of Ms. DuVernay's Tweets about Ms. Fairstein were accessed in Florida. *See* Ribacoff Decl., ¶¶ 3, 5, Exs. 2, 4.[28] Ms. Locke has 15,000 followers on Twitter, 238 of whom are located in Florida. Four (4) of Ms. Locke's Tweets about Ms. Fairstein were published and accessed in Florida because they were "liked" by Florida followers. Ribacoff Decl., ¶¶ 4-5, Exs. 3-4. A defendant's posting of defamatory material about a Florida resident, which is accessed in Florida constitutes a tortious act sufficient to confer personal jurisdiction under Florida's long-arm statute. *Sui v. Wu*, 2011 WL 1396994, at *3 (M.D. Fla. Apr. 13, 2011); *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (Fla. 2010); *See* Florida Statutes, § 48.193(1)(a)(2).

Applying the *Calder* effects test, this Court exercised personal jurisdiction over a defendant who had ***no contacts*** with Florida because he posted multiple defamatory statements about the plaintiffs—who conducted business in Florida but were not Florida residents—on a website, holding that the defendant intended to impact the plaintiffs in every state. *Sui*, 2011 WL 1396994, at *5 (applying *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)). The court further held that under *Licciardello*, the defendant's intentional, tortious conduct, which he purposefully directed at the plaintiffs and which allegedly caused irreparable injury in Florida, established sufficient minimum contacts with Florida. *Id. See Hitchcock v. Scipione*, 2014 WL 12623406, at

[28] As explained in Mr. Ribacoff's declaration, the available data was limited, so these tweets were potentially accessed by more Florida followers. Ribacoff Decl. ¶ 5.

*1 n. 2 (M.D. Fla. May 30, 2014) (until expressly overturned, *Licciardello* controls). Here, Ms. Fairstein *is* a Florida resident and she suffered significant damages in Florida. *See* Fairstein Aff. ¶¶ 14-16.[29] Thus, "Florida possesses a substantial interest in adjudicating a dispute over alleged conduct that purportedly caused an injury within the state." *Sui*, 2011 WL 1396994, at *5. Accordingly, the Individual Defendants' defamatory tweets about Ms. Fairstein provide an independent basis for the Court to exercise personal jurisdiction over these defendants.

## CONCLUSION

For all of the above stated reasons, the Court should deny (i) Defendants' motion to dismiss or transfer for improper venue; and (ii) the Individual Defendants' motion to dismiss for lack of personal jurisdiction, along with such other and further relief as it deems just and proper.

Dated: July 1, 2020

Respectfully Submitted,

By: /s/ Andrew T. Miltenberg
    Andrew T. Miltenberg (*pro hac vice*)
Kara L. Gorycki (*pro hac vice*)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com

-and-

By: /s/ Edward K. Cheffy

---

[29] *Miller v. Gizmodo Media Grp, LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. Apr. 18, 2019), is inapposite. *See* Ind. Defs. Br. at 8. In *Miller*, the plaintiff did not live or work in Florida and did not allege that he suffered any harm in Florida. *Id.* at 1373. In applying the traditional minimum contacts test under *Keeton*, the *Miller* Court found that the defendant's contacts were insufficient in part because he had a small audience for the single Tweet at issue but also because he did not profit from posting the Tweet. In contrast, as alleged in the Complaint, the Individual Defendants used Twitter, and their attacks on Ms. Fairstein, to promote *WTSU*. Compl. ¶¶ 152-164, 171-199. In *Dean v. Easterling*, 2020 WL 1665482, at* 3-4 (M.D. Fla. Apr. 3, 2020), the plaintiff did not demonstrate that the allegedly defamatory material was accessed in Florida nor did he show that he suffered any harm in Florida. The plaintiff's *only* connection to Florida was that he moved there following the alleged defamatory conduct. In contrast, Ms. Fairstein has done business in Florida for twenty-five years, and suffered significant harm to her reputation in Florida. Ms. Fairstein also purchased a home in Florida in 2017. *See generally* Fairstein Aff.. The harm to Ms. Fairstein is also ongoing.

Edward K. Cheffy
Florida Bar No. 393649
Rachael S. Loukonen
Florida Bar No. 668435
Kimberly D. Swanson
Florida Bar No. 1018219
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South
Naples, FL 34102
(239) 261-9300
ekcheffy@napleslaw.com
rloukonen@napleslaw.com
kdswanson@napleslaw.com

*Trial Counsel for Plaintiff Linda Fairstein*