## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

LINDA FAIRSTEIN,                    )
                                    )
            Plaintiff,              )       Case No: 2:20-cv-00180-FtM-66MRM
                                    )
        v.                          )
                                    )
NETFLIX, INC., AVA DUVERNAY,        )
and ATTICA LOCKE,                   )
                                    )
                                    )
            Defendants.             )


## PLAINTIFF'S OPPOSITION TO NETFLIX, INC.'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP ACT

Edward K. Cheffy
Florida Bar No. 393649
Rachael S. Loukonen
Florida Bar No. 668435
Kimberly D. Swanson
Florida Bar No. 1018219
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South
Naples, FL 34102
(239) 261-9300
ekcheffy@napleslaw.com
rloukonen@napleslaw.com
kdswanson@napleslaw.com

*Trial Counsel for Plaintiff Linda Fairstein*

Andrew T. Miltenberg (*pro hac vice*)
Kara L. Gorycki (*pro hac vice*)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com

*Trial Counsel for Plaintiff Linda Fairstein*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................3

   I.   *Carbone* Bars the Application of California's Anti-SLAPP...............................3

   II.   Choice-of-Law Rules Do Not Favor the Application of California's Statute.................4

   III.   The Court Need Not Engage in a Conflict-of-Law .........................................7

   IV.   Netflix's Motion to Strike Should Be Denied.............................................10

CONCLUSION ....................................................................................................18

## **TABLE OF AUTHORITIES**

Cases

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 869 P.2d 454, 457 (Cal. 1994) ...................... 9

*Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1157 n. 8 (S.D. Fla. 2018).............................. 4

*Bishop v. Fla. Spec. Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) ................................. 9

*Brodeur v. Atlas Entm't, Inc.*, 204 Cal. Rptr. 3d 483, 492-94 (Cal. Ct. App. 2016) ................... 13

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350-51 (11th Cir. 2018) ............... 1, 3, 4

*Cf. Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1252-53 (S.D. Fla. 2014)............. 8, 13

*Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) .................................. 6

*Davis v. McKenzie*, 2017 WL 8809359, at *4 (S.D. Fla. Nov. 3, 2017)......................................... 4

*Del Zotto*, 2019 WL 6033062, at *7 ............................................................................ 8, 10

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*,
2016 WL 4256916, at *12 (S.D. Fla. May 16, 2016)....................................................... 9

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
194 F. Supp. 3d 263, 280-81 (S.D.N.Y. 2016)............................................................ 8

*Five for Entm't S.A. v. Rodriguez*, 2013 WL 632977, at *5-7 (S.D. Fla. Feb. 20, 2013)........... 5, 8

*Gottwald v. Bellamy*, 2011 WL 2446856, at *3 (M.D. Fla. June 15, 2011) ........................... 8, 12

*Greene v. Times Publ'g Co.*, 130 So. 3d 724, 729 (Fla. 3d DCA 2014). ................................ 8, 12

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233,
1240 (11th Cir. 2007). .............................................................................. 5

*Gubarev v. Buzzfeed, Inc*., 253 F. Supp. 3d 1149, 1167 (S.D. Fla. 2017) ...................................... 9

*Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1367-68 (M.D. Fla. 2013)................ 4, 8

*Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2017) .................................................. 11

*Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983) .................................................. 13, 14

*James v. Smith*, 2015 WL 13791869, at *3 (M.D. Fla. Aug. 14, 2015) .................................... 10

*John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657,
at *5 (N.D. Ill. Mar. 23, 2020) ........................................................................... 12

*Lane v. G.A.F. Material Corp.*, 2013 WL 1213063, at 6 n. 7 (M.D. Fla. Mar. 25, 2013).............. 4

*Lovingood v. Discovery Commc'ns*, 800 F. App'x 840, 848 (11th Cir. 2020)............................... 2

*Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013)............................................ 4

*Manzari v. Assoc. Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016)...................................... 11

*McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) ............................................ 10

*Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 846-47 (9th Cir. 2001) ...................................... 12

*Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 695 (11th Cir. 2016), ...................................... 8

*N.Y. Times v. Sullivan*, 376 U.S. 253, 280 (1964) ...................................... 13

*Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ................................ 4

*Nix v. ESPN, Inc.*, 772 F. App'x 807, 810 (11th Cir. 2019) ...................................... 5, 6, 8, 9, 10

*Parekh v. CBS Corp.*, 2019 WL 2230075, at \*1 (M.D. Fla. Feb. 14, 2019).................................. 4

*Perez v. Lopez*, 948 N.Y.S. 2d 312, 314 (N.Y. App. Div. 2012).................................... 9

*Ranbaxy Labs, Inc. v. First Databank, Inc.*, 2014 WL 982742,
    at \*6 (M.D. Fla. Mar. 12, 2014) ...................................... 5, 6

*Reich v. Lopez*, 38 F. Supp. 3d 436, 460-62 (S.D.N.Y. 2014)...................................... 9

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005,
    1015 (N.D. Cal. 2017)...................................... 6, 11

*Shelton v. Bauer Publ'g Co.*, 2016 WL 1574025 at \*12 (C.D. Cal. Apr. 18, 2016) ................... 13

*Sheppard v. Freeman*, 79 Cal. Rptr. 3d 13, 18 (Cal. Ct. App. 1999) .......................................... 9

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)...................................... 13, 14

*Stern v. Cosby*, 645 F. Supp. 2d 258, 289 (S.D.N.Y. 2009) ...................................... 8

*Universal Physician Servs., LLC v. Del Zotto*, 2019 WL 6033062,
    at \*6 (M.D. Fla. Nov. 14, 2019)...................................... 7

<u>Statutes</u>

Cal. C.C.P. § 425.16(b)(1) (West 2015) ...................................... 3, 5, 7, 11

Fla. Stat. § 768.295 ...................................... 4, 5, 7

Ga. Code. Ann. § 9-11-11.1(b)(1) (West 2016).................................... 3

<u>Rules</u>

Rule 12 ...................................... 1, 11, 12, 13, 18

Rule 56 ...................................... 1, 3, 4

Section 425.16 of the California Code of Civil Procedure ...................................... 1

Plaintiff, Linda Fairstein ("Plaintiff" or "Ms. Fairstein"), respectfully submits this memorandum of law in opposition to Defendant, Netflix, Inc.'s ("Netflix"),[1] "Special Motion to Strike Pursuant to California Anti-SLAPP Act, Section 425.16 of the California Code of Civil Procedure," ECF No. 30 (the "Motion"). Plaintiff also incorporates herein by reference her Memorandum of Law in Opposition to Defendants'[2] Rule 12(b)(6) motion.[3]

## **INTRODUCTION[4]**

Netflix's frivolous Motion should be denied outright because, under binding Eleventh Circuit precedent, *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350-51 (11th Cir. 2018), California's Anti-SLAPP statute "directly collides" with the Federal Rules of Civil Procedure and abrogates the entitlements of Rule 12 and Rule 56, by imposing a higher, "probability of prevailing," standard of proof on Ms. Fairstein without discovery.

Assuming *arguendo*, that California's Anti-SLAPP statute could be applied in federal court, the Court should decline to do so because Netflix has identified no true conflict of law between California's statute and Florida's (if Florida's statute could be applied). In fact, Netflix ignores that Florida has an Anti-SLAPP statute. There is also no true conflict warranting the application of "New York or California law" to Ms. Fairstein's defamation claims.

---

[1] Neither Ms. Locke nor Ms. DuVernay has joined in Netflix's special motion to strike. Should the Court choose to engage in an Anti-SLAPP analysis, it would apply only to Ms. Fairstein's claims against Netflix.

[2] The Rule 12(b)(6) motion was brought by Netflix (ECF No. 28). As stated in their moving brief, (ECF No. 26, at 2 n. 1), Ms. Locke and Ms. DuVernay intend to join in Netflix's motion if the Court denies their motion to dismiss for lack of personal jurisdiction. Netflix's brief in support of its Rule 12(b)(6) motion is cited herein as "Netflix MTD." Ms. DuVernay and Ms. Locke's moving brief in support of their motions to dismiss or transfer venue is cited herein as "Ind. Defs. Br." Netflix, Ms. DuVernay and Ms. Locke will collectively be referred to herein as "Defendants."

[3] Plaintiff's opposition brief will be referred to herein as "Pl. 12(b)(6) Opp."

[4] All facts relevant to this Motion are alleged in the Complaint, included in the Background section of Plaintiff's 12(b)(6) opposition, and found in the documents referenced in the Complaint, copies of which have been submitted to the Court as part of Plaintiff's Appendix ("P-APP"), ECF No. 46. Ms. Fairstein has also submitted a declaration herewith, the "Declaration of Linda Fairstein in Support of Opposition to Netflix, Inc.'s California Anti-SLAPP Motion," dated June 29, 2020 ("Fairstein Opp. Decl.").

Should the Court elect to apply California's Anti-SLAPP statute, and engage in the requisite two-part analysis, Netflix's Motion should be denied because Ms. Fairstein has demonstrated a probability of prevailing on her defamation claims, including by providing evidence supporting the Complaint's allegations that the manner in which Ms. Fairstein was portrayed was materially false and that Defendants acted with actual malice.

Defendants are dead wrong in their assertion that the false and defamatory manner in which they elected to portray Ms. Fairstein throughout *When They See Us* ("*WTSU*" or the "Series") is protected opinion or rhetorical hyperbole. Because they strongly disagree with certain of Ms. Fairstein's public statements concerning the Central Park jogger case, Defendants are under the erroneous impression that they have free license to defame Ms. Fairstein under the guise of protected opinion. The First Amendment does not afford Defendants the protection they seek and, as the Eleventh Circuit recently held in *Lovingood v. Discovery Commc'ns*, 800 F. App'x 840, 848 (11th Cir. 2020), there is no "invincible shield of protection" for films characterized as docudramas or historical fiction—particularly where, as here, the framework upon which the "opinion" rests is entirely false. Defendants should not now be permitted to hide behind the guise of fiction when they promoted the Series as a true story at every turn. Defendants made every effort to mislead the public into believing that their portrayal of Ms. Fairstein was true and accurate, relying on the public's belief in their false account in order to exact retribution on Ms. Fairstein for a role she did not play in the Central Park jogger case. As a result, Ms. Fairstein's reputation has been sullied, if not destroyed, and her career decimated.

**ARGUMENT**

**I.**     ***Carbone* Bars the Application of California's Anti-SLAPP Statute in Federal Court**

Netflix's Motion is barred by the Eleventh Circuit's ruling in *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018), which precluded the application of Georgia's Anti-SLAPP statute in federal court on the grounds that it abrogated the entitlements conferred by Federal Rules 8 and 12(b)(6) by "requiring the plaintiff to establish that success is not merely plausible but probable." *Id.* at 1353. The Eleventh Circuit further held that Georgia's Anti-SLAPP statute abrogates Rule 56 by nullifying a plaintiff's "right to proceed to trial if he proves the existence of a genuine dispute of material fact" and requiring the plaintiff to prove that it is "likely, not merely possible, that a reasonable jury would find in his favor and to so … without discovery." *Id.* at 1353-1354.

The outcome is the same under California's Anti-SLAPP statute. Like Georgia's Anti-SLAPP statute, California's requires the nonmoving party to establish "that there is a probability that the nonmoving party will prevail on the claim." *Compare* Ga. Code. Ann. § 9-11-11.1(b)(1) (West 2016) *with* Cal. C.C.P. § 425.16(b)(1) (West 2015).[5] As noted by the Eleventh Circuit, "[Federal] Rules 8, 12, and 56 express 'with unmistakable clarity' that proof of probability of success on the merits 'is not required in federal courts' to avoid pretrial dismissal, and that the evidentiary sufficiency of a claim should not be tested before discovery." *Carbone*, 910 F.3d at 1351 (citations omitted). Like the Georgia statute at issue in *Carbone*, California's Anti-SLAPP statute "directly collides" with the Federal Rules and abrogates their entitlements. *Id.* at 1351-54. Accordingly, California's Anti-SLAPP statute does not apply in federal court.

---

[5] California's statute is even more restrictive than Georgia's when it comes to discovery, as a motion to strike under California's statute effectuates an immediate stay while Georgia's statute allows for limited discovery for public figures. *Compare* Cal. C.C.P. § 425.16(g) *with* Ga. Code Ann. § 9-11-11.1(b)(2).

In *Carbone*, the Eleventh Circuit directly addressed California's Anti-SLAPP statute. As Netflix does here, the defendant in *Carbone* argued that the Eleventh Circuit should adopt the position taken by the Ninth Circuit in applying California's Anti-SLAPP statute in federal court. *Id.* at 1356. *See* Motion, at 3 n. 2. The Eleventh Circuit rejected this argument, finding the Ninth Circuit's reasoning flawed, in part because the Ninth Circuit failed to recognize the extant conflict between the Federal Rules and California's Anti-SLAPP statute. *Carbone*, 910 F.3d at 1356.[6] Netflix has provided no reason why this Court must not follow *Carbone*, or why this binding precedent does not preclude the application of California's Anti-SLAPP statute in federal court.[7]

## II.   Choice-of-Law Rules Do Not Favor the Application of California's Statute

Assuming that this Court elects to apply a state Anti-SLAPP statute in this action,[8] Netflix has not shown that California's statute would apply. Netflix ignores that Florida has its own Anti-SLAPP statute, (Fla. Stat. § 768.295), and points to no "true conflict" between Florida's statute and California's. *See Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1367-68 (M.D. Fla. 2013). This is because, while the statutes differ, application of either would produce the same

---

[6] *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013), which Netflix cites in its Motion, relies on *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), the very reasoning of which the Eleventh Circuit rejected in *Carbone*. Motion, at 3 n. 2. *See Carbone*, 910 F.3d at 1356.

[7] Netflix asserts that this Court should also follow the law of the Second Circuit, "where this case should have been venued and would be heard upon transfer." Motion, at 3 n. 2. As fully addressed at Point I of Plaintiff's Opposition to the Ind. Defs. Br., the Southern District of New York ("SDNY") is not a venue where this action could have been brought because SDNY does not have personal jurisdiction over Ms. Locke. This action belongs in this District and this Court is not bound by the opinions of either the Second or Ninth Circuits. *See Lane v. G.A.F. Material Corp.*, 2013 WL 1213063, at 6 n. 7 (M.D. Fla. Mar. 25, 2013) (court not bound by other Circuits' precedent).

[8] Subsequent to *Carbone*, one court in this District has applied Florida's Anti-SLAPP statute. In *Parekh v. CBS Corp.*, 2019 WL 2230075, at *1 (M.D. Fla. Feb. 14, 2019), some discovery was attempted but the plaintiff did not cooperate. After the court dismissed the complaint, the plaintiff appealed. On appeal, the Eleventh Circuit did not address whether Florida's Anti-SLAPP statute was properly applied in federal court because the plaintiff raised this argument for the first time on appeal. *See Parekh v. CBS Corp.*, 2020 WL 3400679, at *6 (11th Cir. June 19, 2020). Courts in the Southern District of Florida, both before and after *Carbone*, have elected not to apply Florida's Anti-SLAPP statute. *See Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1157 n. 8 (S.D. Fla. 2018); *Davis v. McKenzie*, 2017 WL 8809359, at *4 (S.D. Fla. Nov. 3, 2017) (The court "need not draw upon the supplemental remedies of the Florida anti-SLAPP statute as the Federal Rules of Civil Procedure—Rule 12 and Rule 56—provide an adequate framework.").

outcome—Ms. Fairstein's defamation claims will move forward. *Id.* at 1368. *See Five for Entm't S.A. v. Rodriguez*, 2013 WL 632977, at *5-7 (S.D. Fla. Feb. 20, 2013).

Should the Court find that a true conflict exists, choice-of-law rules do not favor the application of California's Anti-SLAPP statute. The factors that the Court should consider to determine which jurisdiction has the "most significant relationship" to this case, for purposes of applying an Anti-SLAPP statute, include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.[9] *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).

Florida has the most significant relationship to this action because Ms. Fairstein, a Florida resident, has suffered significant injury in Florida as a result of Defendants' publication of the Series. *See Nix v. ESPN, Inc.*, 772 F. App'x 807, 810 (11th Cir. 2019). *See* Fairstein Aff., ECF No. 35, at ¶¶ 14-19. Florida has an additional interest in protecting its residents from being the subject of libelous statements. *See Ranbaxy Labs, Inc. v. First Databank, Inc.*, 2014 WL 982742, at *6 (M.D. Fla. Mar. 12, 2014). Florida also has an interest in applying its own Anti-SLAPP statute rather than precluding a Florida resident who can plausibly state a claim from engaging in discovery before being subject to a ruling on the merits, as would occur if California's Anti-SLAPP statute were applied. *Id. Compare* Fla. Stat. § 768.295 *with* Cal. C.C.P. § 425.16. Under Florida's Anti-SLAPP statute, the party seeking dismissal of defamation claims must do so via a summary judgment motion.

---

[9] The parties are in agreement that the relationship factor is neutral.

Relying on case law from the Seventh Circuit, Netflix urges the Court to create a separate choice-of-law rule for affirmative defenses to defamation claims which focuses on "where the allegedly tortious speech took place" and the "domicile of the speaker." Motion, ¶ 8 (citing *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011)).[10] However, federal district courts sitting in Florida have not adopted this approach. *See Nix v. ESPN, Inc.*, 2018 WL 8802885, at *4-5 (S.D. Fla. Aug. 30, 2018); *Ranbaxy*, 2014 WL 982742, at *5-6.

California does not have the most significant relationship to the issue of which Anti-SLAPP statute applies. Motion, at ¶ 8. Even if the Court elects to focus on the "place where the allegedly tortious speech took place," *WTSU* was published, and accessed, globally and, as a result, Ms. Fairstein was defamed around the world, including in Florida. Compl. ¶ 184. *See Nix*, 772 F. App'x at 810; *Nix* 2018 WL 8802885, at *4; *Ranbaxy* Labs, 2014 WL 982742, at *6. Netflix also intentionally marketed its products and services in Florida, including the Series, and streams the Series in Florida. Compl. ¶¶ 23, 27, 337-339, 357-359. Ms. DuVernay and Ms. Locke, with whom Netflix conspired to defame Ms. Fairstein,[11] each have a significant number of Florida followers, promoted the Series through their social media accounts. Compl. ¶¶ 153, 155-157, 162-163, 171-173, 175-177, 178, 181, 183, 184, 187, 197; P-APP002835-2840, 2888, 2891-92, 2893, 2902-904, 2908-2909, 2947-2948, 2950, 3001; Declaration of Lance Ribacoff, dated June 24, 2020 ("Ribacoff Decl."), ECF No. 43 ¶¶ 3-4, Exs. 2-4.

While a portion of the work on the Series was conducted in California, Netflix neglects to mention that the script was written in California, New York and Georgia, and the Series was filmed

---

[10] Netflix's reliance on *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1015 (N.D. Cal. 2017), is also misplaced because the court found that there was no conflict of law between California's and Georgia's Anti-SLAPP statutes and, accordingly, California law applied. The court also followed the "governmental interest" approach to conducting a choice-of-law analysis.

[11] Ms. Fairstein's conspiracy claim is addressed at Point III of her opposition the Ind. Defs. Br., which is incorporated herein by reference.

and directed in New York. DuVernay Decl., (ECF No. 26-1), ¶ 4. *See* Motion, at ¶ 9. Given that the decision to include false and defamatory material about Ms. Fairstein in the Series could have occurred in any of these three locations, California law does not apply.

Netflix has submitted no affidavit attesting to its domicile. *See* Motion, at ¶¶ 7-10. Defendants assert in their briefing that it is domiciled in California. Ind. Defs. Br. at 23; Netflix MTD, at 13. Netflix is a Delaware corporation, headquartered in California, and registered to do business in Florida. Compl. ¶ 23. Netflix conducts business in Florida through its online streaming service and has had offices in Florida for the purposes of filming Netflix original series and documentaries. *Id.* Ms. DuVernay and Ms. Locke are residents of California. *See* DuVernay Decl., ECF No. 26-1, at ¶ 2; Locke Decl. ECF No. 26-2, at ¶ 5. Ms. Fairstein is domiciled in Florida. *See* Fairstein Aff., ECF No. 35, ¶¶ 1-13. Should the Court elect to examine the "domicile of the speaker," (Motion, ¶ 8), then this factor would weigh slightly in favor of California. Under Florida's choice-of-law principles this factor would be inconclusive because the locations of the parties are split between jurisdictions. *Universal Physician Servs., LLC v. Del Zotto*, 2019 WL 6033062, at *6 (M.D. Fla. Nov. 14, 2019).

*In toto*, choice-of-law factors favor the application of Florida's Anti-SLAPP statute in this action if the Court determines that it is proper to apply any Anti-SLAPP statute at all. Netflix has not availed itself of Florida's Anti-SLAPP statute.[12] However, Ms. Fairstein has met her burden under either statute and her case should move forward.

## III. The Court Need Not Engage in a Conflict-of-Law Analysis with Respect to Ms. Fairstein's Defamation Claims

---

[12] Netflix does, however, assert that the Complaint is "without merit" as a matter of law. Motion, ¶ 6. This is the standard set forth in Florida's Anti-SLAPP statute *not* California's statute. *Compare* Fla. Stat. § 768.295 *with* Cal. C.C.P. § 425.16. Netflix should not be permitted to straddle both statutes in the hope that one may apply. In any event, under either statute, the Complaint should not be dismissed.

In each of their motions, including Netflix's motion to strike, (Motion, ¶ 9), Defendants assert that either New York or California law applies to Ms. Fairstein's claims. However, Defendants identify no true conflict between the defamation and conspiracy laws of either jurisdiction and Florida which would require the Court to engage in a conflict of law analysis or apply anything other than Florida law.[13] *See Del Zotto*, 2019 WL 6033062, at *7 ("To the extent no conflict of law exists, Florida law…applies."). *See also Hatton*, 937 F. Supp. 2d at 1368; *Five for Entm't* 2013 WL 632977, at *5. Ms. Fairstein's defamation claims present a false conflict because the elements are the same in New York and Florida.[14] *See Five for Entm't*, 2013 WL 632977, at *5. In each jurisdiction, a plaintiff must allege that the defendant made a statement that was: "(1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory per se or caused the plaintiff special harm." *Compare Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 280-81 (S.D.N.Y. 2016) *with Gottwald v. Bellamy*, 2011 WL 2446856, at *3 (M.D. Fla. June 15, 2011) *and Greene v. Times Publ'g Co.*, 130 So. 3d 724, 729 (Fla. 3d DCA 2014). Each jurisdiction requires actual malice in cases where, as here, the plaintiff is a public figure. *Enigma*, 194 F. Supp. 3d at 287. *Cf. Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1252-53 (S.D. Fla. 2014). New York and Florida law are also the same with respect to defamation *per se*. *Stern v. Cosby*, 645 F. Supp. 2d 258, 289 (S.D.N.Y. 2009). *Cf. Klayman*, 22 F. Supp. 3d at 1247.[15]

Ms. Fairstein's conspiracy claim also poses a false conflict. *See* Netflix MTD, at 35; Ind. Defs. Br. at 8. In all three jurisdictions, a plaintiff is required to allege an underlying tort and a

---

[13] For instance, in *Nix*, 2018 WL 8802885, at *3, upon which Defendants rely, there was a true conflict of law between New York's and Florida's fair report privilege. In *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 695 (11th Cir. 2016), the plaintiff did not oppose the application of New York law.

[14] Defendants concede that the "applicable defamation law principles do not differ materially" between California and New York. Netflix MTD, at 13. Accordingly, there is no "true conflict" between Florida and California law.

[15] Defendants have not—they cannot—asserted that a conflict-of-law analysis is necessary because they intend to rely on the fair report privilege. *See, e.g.*, *Nix*, 2018 WL 8802885, at *3.

conspiracy to commit that tort. *Diversified Mgmt. Sols*., *Inc. v. Control Sys. Research, Inc.*, 2016 WL 4256916, at *12 (S.D. Fla. May 16, 2016); *Reich v. Lopez*, 38 F. Supp. 3d 436, 460-62 (S.D.N.Y. 2014); *Perez v. Lopez*, 948 N.Y.S. 2d 312, 314 (N.Y. App. Div. 2012); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 869 P.2d 454, 457 (Cal. 1994); *Sheppard v. Freeman*, 79 Cal. Rptr. 3d 13, 18 (Cal. Ct. App. 1999). Here, Ms. Fairstein has alleged a conspiracy to commit the underlying tort of defamation. Compl. ¶¶ 375-379.

Assuming *arguendo* that a conflict-of-law analysis were required, the application of the "most significant relationship" test ***does not*** "overwhelmingly point to either the law of New York… or California." Ind. Defs. Br., at 22. *See Gubarev v. Buzzfeed, Inc*., 253 F. Supp. 3d 1149, 1167 (S.D. Fla. 2017). Indeed, the very fact that Defendants are seeking to apply the law of one or the other jurisdiction demonstrates that neither has the "most significant relationship" to this action.

The significant harm caused to Ms. Fairstein in Florida is the determinative factor favoring the application of Florida law to her defamation and conspiracy claims. *See Nix*, 772 F. App'x at 810; *Gubarev*, 253 F. Supp. 3d at 1167; *Bishop v. Fla. Spec. Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).[16] Defendants' bald assertion that Ms. Fairstein's reputational damages "have nothing to do with Florida," (Ind. Defs. Br. at 14, 23), is readily disproven. Ms. Fairstein suffered significant financial, reputational and emotional harm in Florida. Fairstein Aff., ECF No. 35, ¶¶ 14-19. Accordingly, Defendants are incorrect in their assertion that "all of her alleged damages occurred in New York." *See* Ind. Defs. Br. at 23; Netflix MTD at 13.[17] Defendants' argument that Ms.

---

[16] This case is distinguishable from *Nix*, 2018 WL 8802885, at *4 where the plaintiffs' *only* specific injuries occurred in New York and they cited no specific instances of harm within Florida.

[17] Defendants contend that Ms. Fairstein's publishing "businesses" are in New York but Ms. Fairstein is her business and, accordingly, it goes with her wherever she resides. The business names referenced in Ms. Giannini's affidavit, which are "located" at the New York cooperative apartment that is on the market for sale, were not operational businesses which had employees. Declaration of Linda Fairstein, dated June 29, 2020, ECF No. 42, ¶¶ 3-6.

Fairstein could not have suffered any reputational damages in Florida because she did not file a Declaration of Domicile until October 2019 is also disproven by Ms. Fairstein's affidavit, which shows she suffered damages in Florida dating back to the May 31, 2019 premiere of *WTSU*. Fairstein Aff. ¶¶ 16-18.

The place where the conduct occurred is of less significance in cases involving defamation through nationwide, online publication. *Nix*, 2018 WL 8802885, at *4. As set forth above at Point II, Ms. Fairstein was defamed around the world, including in Florida. Apart from this global publication, Defendants' conduct occurred in California, Georgia and New York.

Not one party is a resident or domiciliary of New York. Where, as here, the locations of the parties are split between states, their location is "inconclusive" with respect to a choice-of-law analysis. *See Del Zotto*, 2019 WL 6033062, at *6. Ms. Fairstein's affidavit establishes, beyond any possible doubt, that her residence and domicile are in Florida.[18] *See McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002); *James v. Smith*, 2015 WL 13791869, at *3 (M.D. Fla. Aug. 14, 2015). As set forth above at Point II, Netflix has submitted no affidavit attesting to its domicile and Ms. DuVernay and Ms. Locke are California residents. Under this factor, New York has no relationship to the action and neither Florida nor California has the "most significant relationship" to the action.[19]

## IV.   <u>Netflix's Motion to Strike Should Be Denied</u>

The parties are in agreement that the first prong of the required analysis under California's Anti-SLAPP statute is satisfied. Cal. C.C.P. § 425.16(b)(1), (e)(4); Motion, ¶¶ 10-12. However, the Court should deny Netflix's Motion because Plaintiff can readily demonstrate that there is a

---

[18] As explained in Ms. Fairstein's affidavit she is not, as Defendants' contend, a "newly minted" resident and, even if she were, the damages she suffered in Florida date back to the May 31, 2019 premiere of *WTSU*. *See generally* Fairstein Aff., ECF No. 35. In addition, Defendants' reliance on *Nix*, 2018 WL 8802885, at 4 n. 1, is inapposite because in that case the plaintiff was not a Florida resident, "newly minted" or otherwise.
[19] The parties are in agreement that there is no relationship between them. *See* Ind. Defs. Br. at 23 n. 12.

probability that she will prevail on her defamation claims, fulfilling the second prong of the Anti-SLAPP analysis. Cal. C.C.P. § 425.16(b)(1).

"Reasonable probability in the anti-SLAPP statute has a specialized meaning. The statute requires only a minimum level of legal sufficiency and triability. Indeed, the second step of the anti-SLAPP inquiry is often called the minimal merit prong." *Manzari v. Assoc. Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) (citation omitted). As compared to a Rule 12(b)(6) motion, the "no plausibility" showing required for a motion to dismiss is more demanding than the "no probability" showing required for a motion to strike. *Resolute*, 302 F. Supp. 3d at 1026.[20] If a plaintiff cannot plead a plausible claim under Rule 12(b)(6) then she cannot, as a matter of law, meet the probability of success on the merits standard. *Id.* (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2017)).

Relying on *Resolute*, Netflix appears to contest Ms. Fairstein's probability of success only as a matter of legal sufficiency, as opposed to factual sufficiency, arguing that the Complaint should be stricken as a matter of law. Motion, ¶ 14. To the extent Netflix challenges the factual sufficiency of Ms. Fairstein's claims, then Ms. Fairstein would be entitled to fact discovery before the Court decides the Motion. *Resolute*, 302 F. Supp. 3d at 1027 ("[F]ederal courts allow for discovery before granting an anti-SLAPP motion on grounds of *factual* sufficiency, because under Rule 12 of the Federal Rules of Civil Procedure the 'sufficiency of a plaintiff's case will be tested prior to discovery only for legal sufficiency.'") (emphasis in original) (citation omitted). Fact discovery would be particularly important with respect to whether Defendants acted with actual malice. While, as set forth below, Plaintiff has plausibly alleged this element of her defamation

---

[20] Notably, the Ninth Circuit's view of plausibility under Rule 12(b)(6) versus probability under California's Anti-SLAPP statute directly contradicts *Carbone*, discussed above, in which the court held that the probability standard was a more burdensome standard than plausibility and was in direct conflict with the Federal Rules.

claim, there are facts uniquely within Defendants' exclusive control which may be highly probative on this issue. *See Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 846-47 (9th Cir. 2001).

As fully set forth in Ms. Fairstein's opposition to Netflix's Rule 12(b)(6) motion, the First Amendment offers no protection to Defendants because the film scenes at issue in this action are neither protected opinion nor rhetorical hyperbole. Pl. 12(b)(6) Opp. Br. at Pt. I. *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657, at *5 (N.D. Ill. Mar. 23, 2020), which Defendants heavily rely upon in their briefing, is readily distinguishable and not dispositive. Pl. 12(b)(6) Opp. Br. at Pt. I.C.

As further set forth in her opposition to Netflix's Rule 12(b)(6) motion, Ms. Fairstein has alleged plausible defamation claims against Defendants. As a public figure, Ms. Fairstein must plausibly allege: 1) publication; 2) falsity; 3) actual malice; 4) actual damages; and 5) the statement must be defamatory. *Gottwald*, 2011 WL 2446856, at *3; *Greene*, 130 So. 3d at 729. Defendants challenge Ms. Fairstein's defamation claims on the grounds that the scenes depicted in *WTSU* are (a) "substantially true" and (b) not defamatory. Netflix MTD at 18-35.[21]

As fully detailed in Ms. Fairstein's Rule 12(b)(6) Opposition Brief, the documents Defendants submitted in support of their substantial truth defense are not properly before the Court and any documents that, arguably, may be considered do not support dismissal of the Complaint. As alleged in the Complaint, and supported by the sources referenced therein, the film scenes at issue in this action are demonstrably, and materially, false. Compl. ¶¶ 44-130. In the event that the Court entertains Netflix's Anti-SLAPP motion, Ms. Fairstein has also submitted a declaration

---

[21] The plausibility of Ms. Fairstein's claim for conspiracy to defame is discussed at Point III of Plaintiff's opposition to the Ind. Defs. Br.

herewith which addresses the falsity of the film scenes cited in the Complaint.[22] *See generally* Fairstein Opp. Decl.

In a footnote in Netflix's Rule 12(b)(6) motion, Defendants make the conclusory assertion that "as an admitted public figure, the standard of fault Plaintiff must meet is actual malice…a heavy burden Plaintiff ultimately would not be able to sustain either in all events." Netflix MTD at 15, n. 15. For purposes of California's Anti-SLAPP statute, a plaintiff need only show a reasonable probability that she *can produce* clear and convincing evidence that the defamatory statements were made with actual malice. *Shelton v. Bauer Publ'g Co.*, 2016 WL 1574025 at *12 (C.D. Cal. Apr. 18, 2016).

Actual malice means that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times v. Sullivan*, 376 U.S. 253, 280 (1964). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Absent an admission by the defendant that the defamatory material was false or that the defendant doubted its truth, a public figure must rely upon circumstantial evidence to prove her case. *Hunt v. Liberty Lobby,* 720 F.2d 631, 643 (11th Cir. 1983). *See Klayman*, 22 F. Supp 3d at 1251.

Recklessness may be found where "a story is fabricated by the defendant, is the product of his imagination," "when the publisher's allegations are so inherently improbable that only a reckless [person] would have put them in circulation" or "where there are obvious reasons to doubt

---

[22] Ms. Fairstein submits this declaration because some California courts have treated Anti-SLAPP motions as if they were summary judgment motions. *See, e.g.*, *Brodeur v. Atlas Entm't, Inc.*, 204 Cal. Rptr. 3d 483, 492-94 (Cal. Ct. App. 2016). Ms. Fairstein in no way concedes that summary judgment would be appropriate, without discovery, at this stage of the action particularly since, as noted above, discovery could be needed on the issue of actual malice.

13

the veracity of" a source. *St. Amant*, 390 U.S. at 732. Actual malice can also be inferred from headlines which contain language that is subject to a false and defamatory interpretation. *Hunt*, 720 F.2d at 646. It may also be inferred when the investigation for a story is grossly inadequate under the circumstances. *Id.* at 643. Moreover, a "publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements." *Id.* at 644. All of these factors are present here.

Each false and defamatory scene cited in the Complaint is contradicted by evidence in the public record and was entirely fabricated by Defendants to falsely portray Ms. Fairstein as the unethical, unlawful, racist mastermind behind a plot to convict The Five[23] at any cost, and without substantial evidence. Compl. ¶¶ 44-130; Fairstein Opp. Decl. ¶¶ 7-43.

Ms. DuVernay has publicly stated that she relied on the evidence in the public record when writing the Series, noting that she "folded in all of the court transcripts, the different records and files that we were able to get a hold of." Compl. ¶ 174; P-APP002897. *See also* Compl. ¶¶ 179, 181; P-APP002943. Ms. DuVernay also said that Ms. Locke, who was her "partner" in writing the Series, "delved deep into the court transcripts, testimony, [and] legal maneuvers." Compl. ¶ 177; P-APP002908.

After a successful smear campaign against Ms. Fairstein on Twitter, which resulted in the rescission of Ms. Fairstein's Mystery Writers of America Grandmaster Award, Ms. Locke tweeted, only months before the Series premiere, that she knew that Ms. Fairstein acted with "prejudice or malice in the Central Park Five case…which, she did lead" because Ms. Locke "worked on Ava DuVernay's project on the case" "[t]he research on the project is extensive. And I actually read the trial transcripts." Compl. ¶¶ 162-163; P.-APP002888. On another occasion, Ms. Locke tweeted

---

[23] "The Five" are Kharey (aka Korey) Wise, Yusef Salaam, Kevin Richardson, Raymond Santana and Antron McCray.

"all the research/work I brought home to start Writing Episode 2…. When I tell you this is one of the most accurate portrayals of a true story…this is why @ava our team took the truth as our bible." Compl. ¶ 197; P-APP0030001.

Well prior to the premiere of the Series, Ms. Fairstein separately notified Ms. DuVernay and Netflix of her concerns that she would be falsely portrayed in the Series, and provided them with a list of over twenty sources in the public record which she recommended they consult when creating the Series. Compl. ¶¶ 138-143, 148-151. These sources included the: i) transcripts of the suppression hearings that occurred prior to the trials; ii) transcripts of the two trials; and iii) more than 100 depositions taken in The Five's lawsuit against New York City. *Id.* ¶ 139; P-APP003210-3268.

Given that, by their own accounts, Ms. DuVernay and Ms. Locke extensively researched and studied the public records regarding the case against The Five, and that so many of those records demonstrate the false manner in which they elected to portray Ms. Fairstein in the Series, actual malice can be inferred. Actual malice can also be inferred from the fact that Netflix and Ms. DuVernay disregarded Ms. Fairstein's warning, and the sources that she outlined regarding her actual role in the Central Park Jogger case.

The sources that Defendants improperly attempted to "judicially notice" in their Appendix further suggest that (i) they relied on biased sources when determining how to portray Ms. Fairstein in the Series and (ii) conducted a grossly inadequate investigation. Defs. Exs. 10, 12-22. To the extent that Defendants claim to have relied on Ms. Fairstein's own, public statements, none of them support, or justify, the false and defamatory manner in which Defendants elected to portray her in the Series. Pl. 12(b)(6) Opp. at Pt. II. Ms. Locke also appears to have relied on Ken Burns'

film about the Central Park jogger case, which Ms. Fairstein warned was not a truthful and accurate portrayal. Compl. ¶¶ 138, 156, 164; P-APP003210-3268; 2759-61.

Netflix prominently featured Felicity Huffman, who portrayed Ms. Fairstein in the Series, in a teaser for the Series, ordering a roundup of "thugs," a racist code word. Compl. ¶¶ 103, 165; P-APP002446-50. Netflix also prominently featured Ms. Huffman, as Ms. Fairstein, in the official trailer for the Series saying "every black male in the park last night is a suspect. I need all of them." Compl. ¶ 167. In the trailer were bold banners stating "The Story You Know" and "Is the Lie They Told You." Compl. ¶ 167.

Netflix originally categorized the Series as a documentary. Compl. ¶ 168. Netflix also elected to place a barely legible disclaimer at the end of the credits, which appeared at the end of each episode of the Series. This disclaimer could only be seen if the viewer chose to watch the credits to the end. *Id.* ¶¶ 224-231. Each Defendant promoted the Series as a true story, and marketed it under the slogan "The Story You Know is the Lie They Told You," even though their knowingly false portrayal of Ms. Fairstein bore no relationship to her actual role in the case against The Five. Compl. ¶¶ 165-223; Fairstein Opp. Decl. ¶¶ 6-43. Netflix embraced Ms. DuVernay's and Ms. Locke's false and defamatory portrayal of Ms. Fairstein and conspired with them to destroy Ms. Fairstein's reputation and career.[24]

After the Series premiered, Ms. Locke and Ms. DuVernay each made public statements to the effect that the purpose of the Series was to hold Ms. Fairstein accountable for her "misdeeds" with respect to The Five—though the manner in which Ms. Fairstein is depicted in the Series bears no relationship to what is demonstrated in the public record or what actually occurred. Compl. ¶¶ 44-130, 163, 181-183; Fairstein Opp. Decl. ¶¶ 6-43.

---

[24] *See* Plaintiff's Opposition to Ind. Defs. Br. at Point III.

Pre-and post-premiere, Ms. Locke made a number of public statements against Ms. Fairstein which were clearly intended to incite hatred and ridicule against her. Ms. Locke backed up these statements as "true" by relying on the Series' false and defamatory portrayal of Ms. Fairstein. Compl. ¶¶ 152-164, 187-199; P-APP002835-40, 2888, 2954-55, 2985, 3001. Ms. DuVernay made similar, post-premiere statements. Compl. ¶¶ 178, 181-183; P-APP002909, 2943, 2947.

As stated in the Complaint:

The portrayal of Ms. Fairstein in the film series was deliberately calculated to create one, clear and unmistakable villain to be targeted for hatred and vilification for what happened to The Five. The means of doing so was to cast Ms. Fairstein as morally and legally culpable by assigning her a role in the New York Police Department ("NYPD") investigation that she did not play, including depicting her at places where she never was, making decisions she never made, supervising police officers and detectives over whom she had no control, and putting words into her mouth—that were outrageously offensive—that she never uttered.

*Id.* ¶ 12. Defendants' collaboration in creating the Series, publication of the Series, and marketing and promotion of the Series as a true story achieved Defendants' purpose of destroying Ms. Fairstein's reputation. This is evidenced by the public's outcry against Ms. Fairstein, grounded in viewers' belief that *WTSU* is a true and accurate account of the case against The Five. Compl. ¶¶ 47-48, 232-257; P-APP003033-3184, 3269-3286. Defendants made no attempt to correct the public's misperception that the Series is a truthful and accurate portrayal of Ms. Fairstein. On the contrary, Ms. Locke stated that Ms. Fairstein "deserves all the rage and hate and consequences that are coming her way. She is an unrepentant liar. Fuck her." Compl. ¶ 195; P-APP002987.

Because Ms. Fairstein has plausibly alleged actual malice, and provided supporting evidence from which actual malice can be inferred, Netflix's Anti-SLAPP motion should be denied as a matter of law.

## **CONCLUSION**

For the reasons set forth above, and in Ms. Fairstein's opposition to Netflix's Rule 12(b)(6) motion, the Court should deny Netflix's Anti-SLAPP Motion on the ground that the application of California's Anti-SLAPP statute in federal court is barred by the law of the Eleventh Circuit. Should the Court find that California's Anti-SLAPP statute does apply, it should deny the Motion on the ground that choice-of-law principles do not favor its application here. Should the Court choose to engage in the requisite two-pronged Anti-SLAPP analysis under California's statute, it should deny the Motion, along with such other and further relief as the Court deems just and proper.

Dated: July 1, 2020

 Respectfully Submitted,

By: /s/ Andrew T. Miltenberg
Andrew T. Miltenberg (*pro hac vice*)
Kara L. Gorycki (*pro hac vice*)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
kgorycki@nmllplaw.com

-and-

By: /s/ Edward K. Cheffy
Edward K. Cheffy
Florida Bar No. 393649
Rachael S. Loukonen
Florida Bar No. 668435
Kimberly D. Swanson
Florida Bar No. 1018219
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South
Naples, FL 34102
(239) 261-9300
ekcheffy@napleslaw.com
rloukonen@napleslaw.com

18

kdswanson@napleslaw.com

*Trial Counsel for Plaintiff Linda Fairstein*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2020, a true and correct copy of the foregoing was filed and served by CM/ECF on all counsel or parties of record on the service list.

/s/  EDWARD K. CHEFFY_____