**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| LINDA FAIRSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00180 |
| | ) | |
| NETFLIX, INC., AVA DUVERNAY, and | ) | |
| ATTICA LOCKE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INDIVIDUAL DEFENDANTS AVA DUVERNAY AND ATTICA LOCKE'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL**
**JURISDICTION, OR IN THE ALTERNATIVE, JOINT MOTION WITH NETFLIX,**
**INC. TO DISMISS FOR IMPROPER VENUE OR TRANSFER**

Kelley Geraghty Price (Florida Bar #889539)
DENTONS COHEN & GRIGSBY P.C.
Mercato - Suite 6200
9110 Strada Place
Naples, Florida  34108
Phone: (239) 390-1913
*kelley.price@dentons.com*

Kiran Patel (*pro hac vice*)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York  10020
Phone: (212) 768-6700
*kiran.patel@dentons.com*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

*Trial Counsel for Defendants Netflix, Inc.,*
*Ava DuVernay and Attica Locke*

## **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................ 2

I.      PLAINTIFF HAS FAILED TO MEET HER BURDEN ON JURISDICTION ............... 2

        A.      Personal Jurisdiction Over DuVernay and Locke Would Violate Due
                Process ................................................................................................ 2

                1.      Plaintiff Inexcusably Ignores *Walden v. Fiore* .......................... 2

                2.      The Defendants' Social Media Posts Do Not Establish Jurisdiction ......... 3

                3.      Plaintiff's Conspiracy Count Cannot Support the Exercise of
                        Personal Jurisdiction over the Individual Defendants .............................. 4

II.     VENUE IS NOT PROPER IN THIS DISTRICT ............................................... 6

        A.      None of the Significant Events Occurred in Florida ............................... 7

        B.      Plaintiff's Alleged Injuries Occurred in New York, While She Was Living
                in New York ............................................................................................ 7

III.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO SDNY ...... 10

        A.      All of the Key Section 1404 Factors Strongly Favor Transfer to the SDNY ...... 10

                1.      Convenience of Witnesses And Lack of Ability to Compel
                        Witnesses Strongly Favors SDNY, Despite Willingness of A Few
                        Witnesses to Travel ........................................................................ 10

                2.      The Interests of Justice Point Heavily Toward New York ..................... 13

                3.      The Locus of Operative Facts Favors the SDNY .................................... 14

                4.      Florida Law Does Not Apply .................................................................. 14

                5.      Plaintiff's Choice of Forum Deserves Little Weight .............................. 17

        B.      Transfer Is An Alternative to Dismissal for Improper Venue ............................ 17

CONCLUSION .......................................................................................................... 18

i

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ...........................................................................4, 5

*Brownsberger v. Nextera Energy, Inc.*,
436 F. App'x 953 (11th Cir. 2011) .........................................................................18

*Calder v. Jones*,
465 U.S. 783 (1984) ...............................................................................................2

*Capital Corp. Merch. Banking v. Corp. Colocation, Inc.*,
2008 WL 4058014 (M.D. Fla. Aug. 27, 2008) ......................................................9

*Carlson v. Am. Int'l Inc.*,
30 N.Y.3d 288 (2017) ............................................................................................15

*Chapin Revenue Cycle Mgmt., LLC v. JDA eHealth Sys., Inc.*,
2012 WL 469824 (M.D. Fla. Feb. 13, 2012) .........................................................9

*Clear Marine Ventures, Ltd. v. Brunswick Corp.*,
2009 WL 10667096 (S.D. Fla. Oct. 8, 2009) .........................................................5

*Cooper v. Meridian Yachts, Ltd.*,
575 F.3d 1151 (11th Cir. 2009) .............................................................................15

*Cordis Corp. v. Siemens-Pacesetter, Inc.*,
682 F. Supp. 1200 (S.D. Fla. 1987) .......................................................................18

*Corsi v. InfoWars, LLC*,
2020 WL 1156864 (D.D.C. Mar. 10, 2020) ..........................................................10

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
2012 WL 6102068 (S.D. Fla. Dec. 7, 2012) ..........................................................13

*Diversified Mgmt. Sols. v. Control Sys. Rsch., Inc.*,
2016 WL 4256916 (S.D. Fla. May 16, 2016) ........................................................16

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*,
752 So. 2d 582 (Fla. 2000)......................................................................................6

*Frey v. Minter*,
2017 WL 2172195 (M.D. Fla. May 17, 2017)...................................................9, 10

*Citations in the Table of Authorities are hyperlinked to Westlaw or PACER.

*GTP Leisure Prod., Inc. v. B-W Footwear Co.*,
  55 A.D.2d 1009 (4th Dep't 1977) ........................................................................ 19

*Gubarev v. Buzzfeed, Inc.*,
  253 F. Supp. 3d 1149 (S.D. Fla. 2017) ................................................................ 12

*Immuno AG v. Moor Jankowski*,
  77 N.Y.2d 235 (1991) .......................................................................................... 15

*Internet Sols. Corp. v. Marshall*,
  2010 WL 11617855 (M.D. Fla. Sept. 30, 2010) ............................................... 3, 4

*J & M Assocs., Inc. v. Romero*,
  488 F. App'x 373 (11th Cir. 2012) ........................................................................ 6

*Jenkins Brick Co. v. Bremer*,
  321 F.3d 1366 (11th Cir. 2003) ............................................................................. 7

*John E. Reid & Assocs. v. Netflix, Inc.*,
  2020 WL 1330657 (N.D. Ill. Mar. 23, 2020) ....................................................... 2

*Kesner v. Barron's Inc.*,
  No. 0:19-cv-61370 (S.D. Fla.), ECF No. 76 ......................................................... 9

*Levy v. Pyramid Co.*,
  687 F. Supp. 48 (N.D.N.Y. 1988), *aff'd*, 871 F.2d 9 (2d Cir. 1989) .................. 15

*Licciardello v. Lovelady*,
  544 F.3d 1280 (11th Cir. 2008) ............................................................................. 3

*Machtinger v. Inertial Airline Servs., Inc.*,
  937 So. 2d 730 (Fla. Dist. Ct. App. 2006) ............................................................ 5

*Mason v. Smithkline Beecham Clinical Labs.*,
  146 F. Supp. 2d 1355 (S.D. Fla. 2001) ............................................................... 18

*Miller v. Gizmodo Media Grp., LLC*,
  383 F. Supp. 3d 1365 (S.D. Fla. 2019) ........................................................... 3, 15

*Nix v. ESPN, Inc.*,
  2018 WL 8802885 (S.D. Fla. Aug. 30, 2018), *aff'd*, 772 F. App'x 807 (11th
  Cir. 2019) ............................................................................................................. 17

*Planet Aid v. Reveal, Ctr. for Investig. Reporting*,
  2017 WL 2778825, at *10 (D. Md. June 26, 2017) ........................................... 3, 6

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*,
  2011 WL 5057203 (S.D. Fla. Oct. 24, 2011) ........................................................ 6

*Ramsey v. Fox News Network, LLC*,
　323 F. Supp. 2d 1352 (N.D. Ga. 2004) .......................................................14

*Ruff v. Reising, Etherington, Barnes, Kiselle, P.C.*,
　2011 WL 13298726 (M.D. Fla. Mar. 15, 2011) .......................................13

*Sarver v. Chartier*,
　813 F.3d 891 (9th Cir. 2016) .....................................................................17

*Sky Enterps., LLC v. Offshore Design & Drilling Servs.*,
　2017 WL 7309871 (M.D. Fla. Dec. 21, 2017) ............................................5

*Soc. Language Processing, Inc. v. Ott*,
　2013 WL 1442168 (S.D. Fla. Apr. 9, 2013) ..............................................14

*Sui v. Wu*,
　2011 WL 1396994 (M.D. Fla. Apr. 13, 2011) .............................................4

*Thursday LLC v. Klhip Inc.*,
　2018 WL 4574877 (M.D. Fla. July 11, 2018) ..............................................9

*Tobinick v. Novella*,
　2015 WL 328236 (S.D. Fla. Jan. 23, 2015) .................................................9

*United Techs. Corp. v. Mazer*,
　556 F.3d 1260 (11th Cir. 2009) ....................................................................2

*Walden v. Fiore*,
　571 U.S. 277 (2014) ...........................................................................1, 2, 3, 6

*Weiner v. Podesto*,
　2019 WL 7708494 (S.D. Fla. Aug. 2, 2019) ................................................9

*Williams v. Langford*,
　2013 WL 6858919 (M.D. Fla. Dec. 30, 2013) ............................................5

*World Wrestling Fed'n Entm't, Inc. v. Bozell*,
　142 F. Supp. 2d 514 (S.D.N.Y. 2001) .......................................................19

**Statutes and Rules**

28 United States Code
　§ 1391(b)(2) ...........................................................................................6, 7, 9, 10
　§ 1404...............................................................................................................10
　§ 1406..........................................................................................................10, 18

Restatement (2d) of Conflict of Laws § 145(2) ...............................................16

Plaintiff Linda Fairstein's brief and related filings do nothing to move the needle in her favor on personal jurisdiction, venue or transfer. The entire focus of Plaintiff's filings is herself and her supposed connection to Florida. Yet Plaintiff's professed admiration for and connections to Florida have absolutely no impact on personal jurisdiction over the Individual Defendants, or on proper venue, and carry little to no weight in the transfer analysis.

In responding to DuVernay and Locke's motion to dismiss for lack of personal jurisdiction, Plaintiff concentrates on long-arm jurisdiction and fails to address the due process considerations, going so far as to completely ignore the Supreme Court's decision in *Walden v. Fiore*. Under that authority Plaintiff cannot be the only connection to Florida—yet here, that is all that exists. Neither her purported conspiracy claim nor the Individual Defendants' social media activity can properly be used to establish personal jurisdiction over them, and they should be dismissed.

Plaintiff's venue arguments likewise fail. None of the substantial events giving rise to this case took place in Florida, and venue here is simply not proper. Once again, Plaintiff's focus on her alleged injuries in Florida is both legally inadequate and factually incorrect. Indeed, Plaintiff now admits (in the face of public records she signed) that she was a resident of New York, living in her Manhattan penthouse (which she still owns), when the Series was published in May 2019 and when all of her alleged injuries occurred. She only claimed residency in Florida months later.

As to transfer, the fact that Plaintiff found a handful of friendly witnesses who would be willing to travel to Florida for a trial cannot prevent transfer given the dozens of other witnesses in New York who are key to this case, and New York's monumental interest in the resolution of this matter and the Series. Plaintiff's after-the-fact move to Florida should not be used to force numerous third-party witnesses, including the wrongfully convicted Five and their families, to travel to Florida. The interests of justice strongly weigh in favor of transfer to the SDNY, if this case is not otherwise dismissed. This case has nothing to do with Florida and does not belong here.

**ARGUMENT**

I.     **PLAINTIFF HAS FAILED TO MEET HER BURDEN ON JURISDICTION**

Plaintiff has failed to make even a *prima facie* case for personal jurisdiction over DuVernay and Locke, let alone meet the ultimate burden of proof she bears.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ("Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.") (citations omitted).

A.     **Personal Jurisdiction Over DuVernay and Locke Would Violate Due Process**

1.     **Plaintiff Inexcusably Ignores *Walden v. Fiore***

The Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), controls here.  (ECF 26, Defs. Open. Br. at 9-10.)  Yet, Plaintiff's opposition literally does not mention *Walden* once. *Walden* holds that "*the plaintiff cannot be the only link between the defendant and the forum*."  *Id.* at 285 (emphasis added).  Plaintiff is trying to do exactly what *Walden* prohibits—forcing individuals to defend an action in a foreign state that they have nothing to do with simply because the Plaintiff now resides there.

Ignoring *Walden*, Plaintiff's brief falls back on the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984).  But as the *Walden* Court explained, *Calder's* holding was driven by "*the various facts that gave the article a California focus*," 571 U.S. at 288 (emphasis added), namely, that "*California is the focal point both of the story and of the harm suffered*."  465 U.S. at 789 (emphasis added). That is not the case here for Florida.  The focus of the Series was entirely New York.  It had absolutely nothing to do with Florida.  *See John E. Reid & Assocs. v. Netflix, Inc.*, 2020 WL 1330657, at *5 (N.D. Ill. Mar. 23, 2020) (even where plaintiff was an Illinois corporation, jurisdiction over DuVernay failed under *Walden*, because she had "no meaningful connection to Illinois.  *When They See Us* is about New York").

2

Nor is *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), helpful to Plaintiff here. Not only does *Licciardello* predate *Walden* but the court found that it could exercise personal jurisdiction "because [the defendant's] intentional conduct in his state of residence was *calculated to cause injury to [plaintiff] in Florida*." *Id*. at 1288 (emphasis added). The same cannot remotely be said here, as Plaintiff **did not live in Florida** at the time the Series was written, produced and released. She now admits she only established domicile in Florida in October 2019 (ECF 35, Fairstein Aff. ¶ 2), months *after* the Series was released in May 2019. (Compl. ¶ 1.) Plaintiff's decision to retire in Florida *after* the Series was released, and only months before filing this action, cannot be used to force DuVernay and Locke to defend in a venue where they have no relevant connections over a Series that has nothing to do with Florida. That would offend due process.

### 2.        The Defendants' Social Media Posts Do Not Establish Jurisdiction

Plaintiff also tries to establish jurisdiction over DuVernay and Locke based on their social media posts, falsely asserting that "[t]he Individual Defendants have put forth no evidence demonstrating that their use of Twitter to defame Ms. Fairstein provides no basis for personal jurisdiction." (ECF 41, Pl. Opp. at 19.) Defendants, of course, cited several authorities confirming that "courts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause." *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019); *see* ECF 26 at 7-8.[1]  Plaintiff simply ignores that authority.

Instead, Plaintiff inappropriately focuses only on Florida's long-arm statute. And incredibly, she ignores that in *Internet Sols. Corp. v. Marshall*, after the Florida Supreme Court held that

---

[1] *See also Planet Aid v. Reveal, Ctr. for Investig. Reporting*, 2017 WL 2778825, at *10 (D. Md. June 26, 2017) ("Sending three tweets and four emails related to the Podcasts and the Articles over a period of a year and a half are not 'so substantial that 'they amount to a surrogate'' for [defendants'] presence in Maryland").

defendant's posts satisfied the long-arm statute, on remand, the federal district court held that the exercise of personal jurisdiction *nevertheless would be incompatible with due process*. 2010 WL 11617855 (M.D. Fla. Sept. 30, 2010). The court held "personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website." *Id*. at *5. Plaintiff's sole authority in support of her argument, *Sui v. Wu*, 2011 WL 1396994 (M.D. Fla. Apr. 13, 2011), fails to address this decision (and was decided pre-*Walden*), and is thus wholly unpersuasive.[2]

### 3.     Plaintiff's Conspiracy Count Cannot Support the Exercise of Personal Jurisdiction over the Individual Defendants

As an initial matter, Plaintiff's attempt to found personal jurisdiction through her conspiracy count fails because, as set forth in Netflix's Motion to Dismiss, neither New York nor California law recognizes an independent tort cause of action for conspiracy. (ECF 28 at 35.) And as explained in more detail below, Plaintiff's pitch that Florida law should apply here has no merit.

But even if Florida law were to apply, Plaintiff's purported conspiracy count cannot confer personal jurisdiction. Plaintiff concedes that deficient allegations of a conspiracy cannot be used to establish jurisdiction. (ECF 26 at 8-9.) "In analyzing the conspiracy claim under the plausibility standard, *Iqbal* instructs us that our first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1293 (11th Cir. 2010). Plaintiff's entire conspiracy count is nothing but conclusory. Allegations such as "Defendants agreed and maliciously conspired" (Compl ¶ 376) and "Defendants collaboratively wrote, produced, and published *When They See Us*, as alleged above in Paragraphs 1-3, with the intent to target Ms. Fairstein" (*id.* ¶ 377) are devoid of any factual ballast and precisely the kind of

---

[2] Because the case law is clear that social media posts cannot form the basis of personal jurisdiction, Plaintiff's expert's analysis of DuVernay and Locke's Twitter followers is irrelevant. Even assuming it were relevant on some level, the expert identifies only a miniscule fraction of Twitter followers in Florida —literally 1.2% for DuVernay and 1.5% for Locke. (ECF 41 at 19.)

formulaic labels and conclusions that fail to state a claim. *Am. Dental Ass'n*, 605 F.3d at 1294 (identifying and disregarding "'formulaic recitations' of a conspiracy claim").

To be sure, no facts are pled from which the Court can infer that Defendants *made an agreement to defame* Plaintiff. *See e.g. Clear Marine Ventures, Ltd. v. Brunswick Corp*., 2009 WL 10667096, at *3 (S.D. Fla. Oct. 8, 2009) (conspiracy claim "fails under the *Twombly* pleading requirement as it does not make plausible factual allegations that both [defendants] actually agreed to conspire to commit the alleged fraudulent activities"); *Williams v. Langford*, 2013 WL 6858919, at *3 (M.D. Fla. Dec. 30, 2013) ("Plaintiff alleges no specific facts regarding an agreement or understanding among the defendants to violate his rights."). Stripped of conclusions, the Complaint merely indicates that the Defendants agreed to create and produce the Series. "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290. The obvious alternative explanation here is that Defendants agreed to make a film series and made an artistic decision to tell the story from the point of view of the Five.

Moreover, even if Florida law applied, and even if Plaintiff plausibly alleged a factual basis for conspiracy, as opposed to just slapping that label on her defamation claim, she would still have to establish an assertion of jurisdiction complied with due process. That she cannot do. Plaintiff argues that **"[d]irecting** a conspiracy towards Florida establishes sufficient minimum contacts to satisfy due process." (ECF 41 at 18.) She cites, for example, *Sky Enterps., LLC v. Offshore Design & Drilling Servs.,* 2017 WL 7309871, at *11 (M.D. Fla. Dec. 21, 2017), where defendants emailed the plaintiff in Florida, and *Machtinger v. Inertial Airline Servs., Inc*., 937 So. 2d 730, 734 (Fla. Dist. Ct. App. 2006), where the alleged misrepresentations which formed the fraud conspiracy

were made "via phone calls, faxes, and letters, to IAS officials in Florida."[3]  But in vivid contrast to the cases she cites, the Defendants did not "direct" a conspiracy "towards Florida"—nor could they have, as *Plaintiff did not live in Florida at the time the Series was written, produced and released*.  Here, the Individual Defendants did not communicate directly with anyone in Florida, but rather Netflix made the Series available for streaming globally.  Asserting jurisdiction on that basis is entirely inconsistent with due process as defined by the Supreme Court in *Walden*.[4]

In sum, there is no jurisdiction over DuVernay or Locke, and they should be dismissed.

## II.   <u>VENUE IS NOT PROPER IN THIS DISTRICT</u>

Plaintiff wants to ignore the fact that all of the events related to the Series and her defamation claim occurred in New York (or California), and instead focus on her alleged injury, which she strains to argue somehow occurred in Florida despite the fact that she did not live in Florida at the time the Series aired and her cause of action accrued.  She is incorrect on both fronts.  Venue in Florida is simply not proper under Section 1391(b)(2).

---

[3] *See also J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 376 (11th Cir. 2012) (personal jurisdiction in Alabama existed where "[t]he complaint alleged that an overt act [in furtherance of the conspiracy], in the form of a presentation . . . occurred in Baldwin County, Alabama") *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 2011 WL 5057203, at *6 (S.D. Fla. Oct. 24, 2011) (complaint alleged several acts taking place in Florida including a sale consummated in Florida pursuant to a contract with a Florida choice of law provision).

[4] Plaintiff cites *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co*., 752 So. 2d 582 (Fla. 2000), which held personal jurisdiction was appropriate where the Florida consumer plaintiffs were "embraced within" the defendants' nationwide price-fixing conspiracy.  *Id*. at 586.  The court recognized that its holding was "controlled by United States Supreme Court precedent interpreting the Due Process Clause" (*id.* at 584); and thus it is unlikely sustainable post-*Walden*.  Considering the conspiracy theory of jurisdiction in light of *Walden*, the District of Maryland recently held that "Defendants could not have had a reasonable expectation that PRX's nationwide distribution of the Podcasts would be sufficient to subject PRX to personal jurisdiction in Maryland merely because five of those 364 radio stations would broadcast the Podcasts into Maryland."  *Planet Aid, Inc*., 2017 WL 2778825, at *6 ("applying the conspiracy theory of jurisdiction here does not comport with the Constitution's due process requirements").  Even under pre-*Walden* due process precedent, the *Execu-Tech* defendants could expect to be "haled into court" in Florida to answer to Florida consumers they injured; not so here where Plaintiff was not even a Florida resident when the Series was released.

## A.    None of the Significant Events Occurred in Florida

Plaintiff cites no authority for her claim that Defendants are wrong for focusing on the *Defendants'* relevant activities, and not Plaintiff's.  (ECF 41 at 7, n. 11.)  And she ignores *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003), which favorably cited and "approve[d]" of cases holding that Section 1391 is "meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  Here, it is undisputed that the Series was filmed in New York about a crime committed in New York and the investigation and prosecution by the Manhattan District Attorney's Office, including by Plaintiff in her role as a NYC public official, the Head of the Sex Crimes Unit.  The fact that the certain of Defendants' activities took place in California and Georgia does not mean New York is not a proper venue—rather, California may also be a proper venue.  *Id.* at 1371 (Section 1391 "contemplates some cases in which venue will be proper in two or more districts.").  But none of the significant events took place in Florida.

## B.    Plaintiff's Alleged Injuries Occurred in New York, While She Was Living in New York

Even if the Court were to focus on Plaintiff's alleged injuries, it would find that they occurred while Plaintiff was living in New York and were felt primarily in New York.  Plaintiff has now conceded she did not claim residency in Florida until October 2019 (which she was forced to admit once confronted with the public tax records she signed, attached to Defendants' motion).[5]  (ECF 35, Fairstein Aff. ¶ 2.)  Yet ***all*** of the alleged injuries she cites in the Complaint occurred prior to that date, when she was resident in New York where she was longtime public official and her business and life were centered.  The alleged defamation—the Series—was published on May 31, 2019.  And she alleges her contracts were all terminated in June 2019—including Dutton, her US publisher,

---

[5] Prior to filing their motion, Defendants inquired with counsel about the timing of Ms. Fairstein's "residency" and the basis for bringing suit in Florida.  (Ex. 1 to Declaration of Kelley Price ("Price Decl."), May 4, 2020 Ltr. from N. Spears to A. Miltenberg.)  Plaintiff did not respond with that information.

which terminated her "within a week of the series' premiere (Compl. ¶ 244).[6]  Similarly she resigned from the Vassar Board of Trustees in June 2019 (*id*. ¶ 252, n. 186) and from the Safe Horizon board at the same time (*id*. ¶ 253).  Her Complaint also focuses on the New York-based Mystery Writers of America's decision to withdraw her award, which happened even earlier in 2018.  (*Id*. ¶ 158.)

These injuries all occurred in New York.  Plaintiff does not contest that her publisher Dutton is based in New York, Plaintiff's own publishing businesses were (and still are) New York entities, and all of the boards from which she resigned are in New York.  While Plaintiff argues that "new copies of Ms. Fairstein's crime novels, published through Dutton, were no longer available for sale in Florida," (ECF 41 at 8), she also contends she "suffered damages on an international level due to the cancellation of her U.K. publishing contract."  (*Id*. at 12.)  The fact that her books may no longer be for sale (at small books stores in Eastern Florida or elsewhere) is in no way unique to Florida.[7]  Lastly, Plaintiff's statement that her New York publishing entities "are no longer operational" (*id*. at 8, n.12) is facially incorrect.  The New York Secretary of State website shows all three are still "active".  In any event, all income through her publishing and consulting contracts would have gone through these New York entities in the past year.  (ECF 42, ¶¶ 4-6.)

Nor do the cases Plaintiff cites compel a finding that venue is proper in Florida.  Just the opposite.  Each are distinguishable in that ***the plaintiffs all lived in Florida at the time the allegedly defamatory statements were made***, and thus their injuries were suffered in Florida.[8]

---

[6] Her UK publisher terminated her "around the same time"  (Compl. ¶ 245); and her "literary agency" dropped her in June 2019 as well  (*id*. ¶ 246, n. 178).

[7] Further, her claim that "the Florida media reported" on her resignations is unremarkable, given she alleged her contract terminations and resignations were publicized nationally.  (Compl. ¶¶ 244, 246, 252.)

[8] *See e.g. Weiner v. Podesto*, 2019 WL 7708494, at *3 (S.D. Fla. Aug. 2, 2019) ("Weiner is a Florida resident"); *Capital Corp. Merch. Banking v. Corp. Colocation, Inc*., 2008 WL 4058014, at *2 (M.D. Fla. Aug. 27, 2008) ("Capital Corp. resides in Orlando, Florida, and therefore the injuries resulting from the defamatory statements occurred in this District").  While the decision in *Thursday LLC v. Klhip Inc.*, 2018 WL 4574877 (M.D. Fla. July 11, 2018) is unclear as to where the plaintiff resided at the time the statements were published, the complaint confirms that "Thursday is a Florida limited liability company with a

Importantly, in *Tobinick v. Novella*, 2015 WL 328236, at *3 (S.D. Fla. Jan. 23, 2015), the defendant "was aware at the time he published his article that Plaintiff Tobinick resided in Florida and did business in the state." Nothing of the sort could be said here, as Plaintiff did not reside in Florida at the time the Series was researched and released.

Plaintiff's attempt to distinguish Defendants' cases also is futile. *Kesner v. Barron's Inc.*, No. 0:19-cv-61370 (S.D. Fla.), ECF No. 76, is directly on point. The court found that "all substantial events" relating to plaintiff's claims occurred in New York because defendants "published their statements from New York. The [Barron's] article focused on Plaintiff's firm's representation of three clients while he was a named partner at the New York law firm . . . , and reported on the SEC lawsuit filed in New York federal court[.]" *Id*. at 4. Similarly, here Defendants' statements were filmed and produced in New York and published from California, and the Series is entirely focused on New York and relates to Plaintiff's work as a prominent New York public official, the head of the Manhattan D.A. Office's Sex Crimes Unit, in one of its most significant criminal cases.

Plaintiff also tries to distinguish *Frey v. Minter*, 2017 WL 2172195 (M.D. Fla. May 17, 2017) on the grounds that "the plaintiff's damages arose solely from his career as an attorney in Georgia" and the defamatory statements at issue were published in Georgia." (ECF 41 at 8, n. 13.) First, as discussed above, Fairstein's injuries arise from her reputation as a prosecutor and novelist in New York. Second, while the court held the defamatory statements were *made* in Georgia in that case, 2017 WL 2172195 at *2, they were actually *published* "throughout the global internet." 8:17-cv-00147-JSM-JSS, ECF No. 16 at ¶ 42. Therefore this is not a ground on which to distinguish the case. As other courts have held, "the mere fact that a website hosting the allegedly defamatory

principal place of business in Clearwater, Florida." *Id*., No. 8:17-cv-01587-WFJ-AEP (M.D. Fla.) at ECF No. 13, ¶ 1. And in *Chapin Revenue Cycle Mgmt., LLC v. JDA eHealth Sys., Inc.*, 2012 WL 469824, at *4 (M.D. Fla. Feb. 13, 2012), the court's holding that venue was proper was also based on the fact that defendant withdrew its objection to personal jurisdiction, and thus Section 1391(1) was satisfied.

statements is accessible from the [forum district] does not create venue here under § 1391(b)(2) *because it has nothing to do with where the acts 'giving rise to the claim' . . . occurred."* *Corsi v. InfoWars, LLC*, 2020 WL 1156864, at *3 (D.D.C. Mar. 10, 2020). Here, the acts "giving rise to the claim" did not occur in Florida.

Because venue is clearly not proper in this district, the Court should dismiss the entire action, or transfer it to the SDNY pursuant to 28 U.S.C. § 1406.

## III.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO SDNY

### A.   All of the Key Section 1404 Factors Strongly Favor Transfer to the SDNY

#### 1.   Convenience of Witnesses And Lack of Ability to Compel Witnesses Strongly Favors SDNY, Despite Willingness of A Few Witnesses to Travel

Plaintiff's filings make abundantly clear that *the only key witness for which this district is a convenient forum is her*. The vast majority of witnesses identified in Plaintiff's own Complaint reside within New York City or the subpoena power of the SDNY, and are not subject to this Court's subpoena power. As shown on the attached chart (Ex. 2 to Price Decl.), of all the witnesses identified in the Complaint, Plaintiff's Opposition, her Affidavits, or by either party in their pleadings, only Plaintiff, her husband and two others reside in Florida. In contrast, 37 of the 43 still living third-party witnesses live within the subpoena power of the SDNY, including the most critical witnesses were this case to survive dismissal. (*Id.*)

Plaintiff brushes aside the witnesses Defendants identified as providing key testimony and living in New York. For example, she takes issue with the fact that Nancy Ryan has not affirmatively said she would not appear in Florida. (ECF 41 at 11.) Yet, in her other filings, Plaintiff admits she vehemently "disliked Ms. Ryan, and disagreed with the manner in which she handled the 2002 reinvestigation[.]" (ECF 45, Opp. to MTD at 31-32.) There is absolutely no reason to believe Ms. Ryan would agree to travel to Florida for Plaintiff. Plaintiff's claim that Peter Casolaro is not

relevant because he was only mentioned in one scene in the Complaint (ECF 41, at 11, n. 21) is baseless; the scene is one Plaintiff challenges. (Compl. ¶ 127.) Plaintiff's claim that John Fried is not a "key" witness is belied by her own declaration; she discusses how she talked to Fried about the case assignment, not Ms. Ryan. (ECF 44-1, Fairstein Decl. ¶¶ 11-13.) Because Plaintiff disputes the Series' depiction of the way in which the case was assigned, Mr. Fried's testimony is relevant.[9]

Plaintiff's claim that the Five "should not be considered in the Court's analysis" (ECF 41 at 12) is a blatant attempt to once again silence the Five. The fact that the Five do not appear in any of the scenes which Plaintiff challenges does not mean their testimony is irrelevant. Plaintiff's "narrative" in this lawsuit is plainly inconsistent with theirs. And Plaintiff admits she visited the crime scene with Kevin Richardson and Korey Wise. (ECF 45 at 29.) Raymond Santana, Jr. testified he spoke with Plaintiff at the crime scene (Ex. 5 to Price Decl., Santana, Jr. Dep., 4/26/13 at 358-60) and Yusef Salaam testified that he saw Plaintiff at the precinct while being interrogated (Ex. 6 to Price Decl., Salaam Dep., 6/17/13 at 671-72).[10] Plaintiff disputes both her appearances at the crime scene and her role at the precincts; and she has submitted to the Court the Five's 1989 video confessions.

Plaintiff's attempt to dismiss the testimony of the Five's family members as speculative is also wrong. The extent of their testimony of course depends on which, if any, of Plaintiff's claims survive the motion to dismiss. Plaintiff's reliance on *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1164 (S.D. Fla. 2017) is misplaced. In that case, the defendants failed to identify by name or

---

[9] Plaintiff's claim that Detectives Honeyman and Whelpley are not key witnesses is likewise ridiculous. *Plaintiff* identified these witnesses in her Complaint as allegedly supporting her claims; and they were present at the interrogations of the Five. The same is true of Dets. Tagiloni, Farrell, and several others she identifies. (Ex. 2 to Price Decl.). Further, other witnesses identified in Plaintiff's Appendix can testify about significant interactions with her during the investigation. (*See* J. Robinson Dep., Ex. 4 to Price Decl.)

[10] Even though Mr. Richardson lives in New Jersey, he is within a 100 miles of the SDNY, and thus within the court's subpoena power. While Mr. Santana and Mr. Salaam do not currently reside in New York, they have more connections to New York than Florida, and family living in New York as noted above.

otherwise its supposed "potential witnesses".  Here, in contrast, Defendants identified several family members as witnesses by name, including Mr. Santana's father, Mr. Salaam's mother and David Nocenti, and stated their relevance.  (ECF 26, at 19-20; ECF 28-1 (video).)  And of course they are depicted in the Series itself.  The fact that Plaintiff does not challenge the scene with Ms. Salaam does not make her testimony irrelevant; it is critical context for Plaintiff's claimed defamation. Plaintiff need not feign confusion as to why these witnesses are relevant; *she admits that she spoke to them* at the stationhouse.  (*See* ECF 45 at 30; *see also* Ex. 7 to Price Decl., Nocenti Trial Testimony, 7/30/90 at 4305-4312; Ex. 8 to Price Decl., Angela Cuffee Black (Mr. Richardson's sister) Dep., 12/14/12 at 254-256.)[11]  Ms. Salaam, Ms. Black and Mr. Nocenti all live in New York. (Ex. 2 to Price Decl.; ECF 26-3, Giannini Decl., at ¶ 5.)  It would be a gross injustice to force the Five and their families to give their testimony in Florida to serve Plaintiff's convenience.

Certainly, Plaintiff's putative traveling band of friendly witnesses is not enough to shift the convenience of witnesses to Florida or to prevent transfer.  Courts look not only at the convenience of the witnesses and the availability of the compulsory process, but also the "the cost of obtaining the presence of witnesses[.]"  *Ruff v. Reising, Etherington, Barnes, Kiselle, P.C.*, 2011 WL 13298726, at *3 (M.D. Fla. Mar. 15, 2011).  Even for those "witnesses who are willing to attend trial in this district, the cost, time and inconvenience of travel to attend trial here would be substantial. These burdens would be minimized if the case were transferred."  *Id*. at *4.[12]  With so many third-

---

[11] Plaintiff also erroneously challenges the importance of the original defense lawyers.  Michael Joseph, Antron McCray's attorney, testified as to his impressions of the prosecution's timeliness of disclosure of DNA evidence.  (Ex. 9 to Price Decl., Joseph Dep., 6/12/13 at 112.)  Plaintiff challenges the scenes relating to the discussion of DNA evidence and the timing of disclosure.

[12] *See also Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 2012 WL 6102068, at *26 (S.D. Fla. Dec. 7, 2012) ("the travel considerations, such as delays, cancellations, and other such problems, relating to so many of the witnesses were this case to proceed in Fort Lauderdale—all of which can wreak havoc on a trial schedule—dictate the preferability of" transfer).  And unlike third-parties, while Netflix's California employees would have to travel, they would already have to do so voluntarily in any venue.

party witnesses needing to travel just to accommodate Plaintiff, the costs and logistical concerns would make trial in this district unduly burdensome. And presenting the majority by deposition rather than live testimony is no answer.

Other than herself and her husband, Plaintiff identifies only two witnesses who now reside in Florida. Trisha Meili, the jogger who was the victim of the crime for which the Five were wrongfully convicted, is not a key witness as Plaintiff asserts. Ms. Meili was in a coma for 11 days after the attack (Compl. ¶ 84), and thus has no relevant evidence on facts relating to the investigation and interrogations which are the subject of this suit. Plaintiff's other supposed witness in Florida, Officer Arroyo, is not significant enough to outweigh the numerous other witnesses who would have to travel from New York to Florida for trial. And as discussed below, Plaintiff and her husband clearly have the resources to travel to New York themselves.

### 2. The Interests of Justice Point Heavily Toward New York

If there were ever a case in which the interests of justice favor transfer to New York, this is that case. The "Central Park Jogger" case is an important chapter in the history of New York's criminal justice system. Following the confession and matching DNA of a serial rapist, the Five were exonerated after having spent their youth in prison, and obtained a $41 million settlement from New York City. Given the effects of this case on the City, its public officials and the public, New York has a significant interest in the resolution of Plaintiff's claims. In contrast, Florida's only potential interest is that Plaintiff moved here after the Series' release. This after-the-fact relocation does not possibly outweigh New York's strong interest in the case. *See Soc. Language Processing, Inc. v. Ott*, 2013 WL 1442168, at *5 (S.D. Fla. Apr. 9, 2013) (transferring case finding that "New York has a much greater local interest in the outcome of this dispute than Florida does" even though "Plaintiff's CEO resides here and Plaintiff is incorporated here").

13

*Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352 (N.D. Ga. 2004) is directly on point, holding that transfer was appropriate because the "defamation action arises out of a report researched, written, and produced in Colorado, about a crime that took place in Colorado, at the Plaintiffs' former residence in Colorado, and that was investigated by Colorado law enforcement, Colorado prosecutors and Colorado private investigators." *Id*. at 1358. In response, Plaintiff weakly asserts that the Ramsey plaintiffs no longer lived in Georgia at the time of the action—but they *did* live there at the time the defamatory statements were published, which is more than can be said of Fairstein and Florida. Yet the court found even that connection was not sufficient to override Colorado's important interest in the case. *Id*. In short, trying this case anywhere but New York would not serve the interests of justice, which include community access to, and understanding and respect for, trials that involve their New York government and officials.

### 3.    The Locus of Operative Facts Favors the SDNY

Despite Plaintiff's assertion, the locus of operative facts is not a neutral factor. Nothing requires there to be a *single* locus of operative facts. The important point is that, for all of the reasons discussed herein, much more relevant activities took place in New York than in Florida.

### 4.    Florida Law Does Not Apply

Under applicable choice of law principles, and generally, Florida has nothing to do with this dispute and in no way could Florida law apply to Plaintiff's substantive claims. In response, Plaintiff argues there's "no true conflict" between the laws of Florida and those of New York or California, so no choice need be made. (ECF 44, Anti-SLAPP Opp. at 8.) Since that is Plaintiff's position, she cannot (and does not) quibble with the applicability of any of the basic, common law defamation principles expressed in Defendants' Motion to Dismiss. But in any event, Plaintiff is incorrect. "[A] true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." *Cooper v.*

14

*Meridian Yachts, Ltd.,* 575 F.3d 1151, 1171 (11th Cir. 2009).[13]

Here, Plaintiff asserts a purported "cause of action for civil conspiracy" under Florida law. (Compl. Count VII.)  Plaintiff relies on that tort claim as the basis for her invocation of the "Florida . . . 'conspiracy theory of personal jurisdiction.'" (ECF 41 at 18.)  However, neither New York nor California "recognize a freestanding claim for conspiracy." *Carlson v. Am. Int'l Inc.*, 30 N.Y.3d 288, 310 (2017); *see* ECF 28 at 35.  That is the definition of a "true conflict."  *See Miller*, 2019 WL 1790248, at *12 n. 8 (S.D. Fla. Apr. 24, 2019) ("To the extent there is a conflict between New York and Florida law on civil conspiracy, the Court applies New York law").[14]

Under the applicable "most significant relationship" factors,[15] Plaintiff cannot dispute they overwhelmingly point to either New York (where the Series was filmed and Plaintiff worked for decades and still maintains property and businesses) or California (where the Series was written and all Defendants are domiciled).  She tries to argue that "the very fact that Defendants are seeking to apply the law of one or the other jurisdiction demonstrates neither has the 'most significant relationship'" (ECF 44 at 9).  That is sophistry.  The incontestable point is that *either* New York or California have a better claim, and greater interests, than Florida, and it's not even close.

---

[13] Plaintiff argues that in the event of a "false conflict" the court may not "apply anything other than Florida law." (ECF 44 at 8.)  That is also wrong. "If a false conflict exists, 'the court should avoid the conflicts question and simply decide the issue under the law of *each of the interested states*.'" *Cooper*, 575 F.3d at 1171 (emphasis added).  In any event, where, as here, venue and/or jurisdiction do not lie, the forum's law cannot apply. *Levy v. Pyramid Co.*, 687 F. Supp. 48 (N.D.N.Y. 1988), *aff'd*, 871 F.2d 9 (2d Cir. 1989).

[14] If the case proceeds beyond the Motion to Dismiss, other conflicts will arise requiring a choice of law. "From a policy perspective, a true conflict exists" as to the substantive defamation law (*Cooper*, 575 F.3d at 1171); for example, "the free speech guarantee of the New York State Constitution" is "often broader than the minimum required by the Federal Constitution" with respect to opinion, *Immuno AG v. Moor Jankowski*, 77 N.Y.2d 235, 249 (1991), and as Plaintiff herself notes, New York courts apply the libel-proof plaintiff doctrine (not relied upon in Defendants' Rule 12(b)(6) Motion) while those in Florida do not. (ECF 45 at 24-25.)

[15] The Restatement's "most significant relationship" factors, which "include": (a) where the injury occurred, (b) where the conduct causing the injury occurred, (c) the "domicil, residence, nationality, place of incorporation and place of business of the parties", and (d) where the parties' "relationship, if any, . . . is centered."  Restatement (2d) of Conflict of Laws § 145(2) (the parties agree the last factor is irrelevant).

Plaintiff's main (and really, only) point is that she is (now) a Florida resident, and the purported "harm caused to [her] in Florida is the determinative factor favoring the application of Florida law to her defamation and conspiracy claims." (ECF 44 at 5, 9.)  Not so.  As to the conspiracy claim, in *Diversified Mgmt. Sols. v. Control Sys. Rsch., Inc.,* 2016 WL 4256916 (S.D. Fla. May 16, 2016), a case cited by Plaintiff, the court applied Florida law because that was "where the alleged conspiracy . . . was developed" and "the driving force behind the conspiracy" was "a citizen of Florida" as were "most of the remaining Defendants."  *Id.* at *3.  Under that analysis, and Plaintiff's allegations, either California or New York law—but definitively not Florida—would apply to the conspiracy claim.[16]

Plaintiff's argument comes down to the notion that since she has a vacation home in Florida and declared Florida residency late last year—*after* the Series was released—her purported injuries were ipso facto in Florida.[17]  Plaintiff is wrong.  Under the Restatement "the state with the most significant relationship 'will usually be the state where the plaintiff was domiciled at the time'" of the allegedly defamatory publication.  *Sarver v. Chartier*, 813 F.3d 891, 898 (9th Cir. 2016) (where plaintiff service member moved around, there was "no basis to conclude that New Jersey was indeed his legal domicile at the time The Hurt Locker was released").

Even if Plaintiff had been an actual Florida resident at the time the Series was released, that would not be enough.  *See id.*; *Nix v. ESPN, Inc.*, 2018 WL 8802885, n. 2 (S.D. Fla. Aug. 30, 2018), *aff'd*, 772 F. App'x 807 (11th Cir. 2019).  Plaintiff claims reliance on *Nix*, but ignores the Eleventh Circuit's admonition that "a plaintiff may suffer greater injury in another state if the defamatory

---

[16] Plaintiff's comment that "Netflix has submitted no affidavit attesting to its domicile" (ECF 44 at 10) is frivolous; her Complaint alleges Netflix is a citizen of California (Compl. ¶ 23), and it is a matter of public record.

[17] Plaintiff did not even hire a broker to sell her New York penthouse, register to vote in Florida or obtain a Florida driver's license, until after the Series was released, and she apparently has been back in New York for procedure in late 2019.  (*See* ECF 35, Fairstein Decl. ¶¶ 11-13.)

matter 'related to an activity of the plaintiff that is principally located in [that] state,' or 'the plaintiff suffered greater special damages in [that] state than in the state of his domicil.'"  772 F. App'x at 810 (quoting Rest. § 150 com. (e)).  As set forth above, that is abundantly true here; Plaintiff's claimed injuries are New York-based.

### 5.   Plaintiff's Choice of Forum Deserves Little Weight

Plaintiff does nothing to rebut the cases discounting Plaintiff's forum choice where the underlying facts did not occur in that forum.  (*See* ECF 26 at 24-25.)  She concedes she has the resources to litigate in New York (ECF 41 at 10, n. 17), as she must.  Plaintiff is clearly no pauper, owning a New York penthouse listed for nearly $8 million (ECF 26-6) and maintaining her second home and writer's cottage for decades on Martha's Vineyard (*see* Exs. 10-12 to Price Decl.), which she did not disclose to the Court.  Further, Plaintiff's husband, Michael Goldberg, is still a Senior Advisory Partner and Managing Director of a New York private equity company.[18] Claiming that New York is not convenient for them is unbelievable.[19]

### B.   Transfer Is An Alternative to Dismissal for Improper Venue

Somewhat ironically, Plaintiff asserts that Defendant Locke is not subject to personal jurisdiction in the SDNY and thus transfer is not possible.  (*See* ECF 41 at 9.)  But as detailed above, it would be appropriate to simply dismiss this action because venue is improper in this district.  *See Brownsberger v. Nextera Energy, Inc*., 436 F. App'x 953 (11th Cir. 2011) (affirming dismissal of one defendant for lack of personal jurisdiction and dismissal of remaining defendants for improper venue). Transfer pursuant to 28 U.S.C. § 1406 would thus be in the interest of Plaintiff as an alternative to an outright dismissal.

---

[18] https://www.kelso.com/team/michael-goldberg

[19] This is nothing like the case of *Mason v. Smithkline Beecham Clinical Labs*., 146 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001), which involved the medical claims of a sick and financially insecure plaintiff.

Alternatively, if the Court is not inclined to dismiss the entire action for improper venue, it can—*and should*—dismiss the claims against Locke and DuVernay for lack of personal jurisdiction and transfer only Netflix to SDNY. Under this scenario, the question of personal jurisdiction over Locke in New York is of no consequence. *See Cordis Corp. v. Siemens-Pacesetter, Inc*., 682 F. Supp. 1200, 1201–02 (S.D. Fla. 1987) ("that this action could not have originally been brought against Hutchinson in California is irrelevant since Hutchinson is not now a party to the action").

In any event, Plaintiff's disingenuous attempt to argue Locke is not subject to personal jurisdiction in New York (but would be here, where she has no contacts whatsoever) is incorrect: "[w]hen a non-domiciliary engages in a purposeful business transaction in New York and makes a defamatory statement outside of New York about that specific transaction, New York courts may exercise jurisdiction over his person for a cause of action based upon the defamatory statement." *GTP Leisure Prod., Inc. v. B-W Footwear Co*., 55 A.D.2d 1009, 1010 (4th Dep't 1977). Jurisdiction lies in New York because Locke purposefully transacted with Netflix to research and a draft a script for a Series about New York to be filmed and produced in New York. As Plaintiff admits, jurisdiction is proper where the defendant allegedly "produced defamatory material in New York" (ECF 41 at 9); Locke is credited as a co-producer of the Series, and is sued on this basis. (Compl. ¶ 3.) *See World Wrestling Fed'n Entm't, v. Bozell*, 142 F. Supp. 2d 514, 533 (S.D.N.Y. 2001) (long-arm met where complaint alleged defendant "took advantage of 'New York's unique resources in the entertainment industry' on numerous occasions"). As such, transfer is proper in all events.

## CONCLUSION

Based on the foregoing, Defendants Ava DuVernay and Attica Locke request that this Court dismiss them from this action for lack of personal jurisdiction. Alternatively, all Defendants jointly move to dismiss for improper venue, or in the alternative, to transfer the entirety of the action to the United States District Court for the Southern District of New York.

Dated: July 29, 2020                                  Respectfully submitted,

                                                     /s/ Natalie J. Spears

                                                     Natalie J. Spears (*pro hac vice*)
                                                     Gregory R. Naron (*pro hac vice*)
                                                     Jacqueline A. Giannini (*pro hac vice*)
                                                     DENTONS US LLP
                                                     233 South Wacker Drive, Suite 5900
                                                     Chicago, Illinois 60606
                                                     Phone: (312) 876-8000
                                                     *natalie.spears@dentons.com*
                                                     *gregory.naron@dentons.com*
                                                     *jacqui.giannini@dentons.com*

                                                     Kelley Geraghty Price (Florida Bar #889539)
                                                     DENTONS COHEN & GRIGSBY P.C.
                                                     Mercato - Suite 6200
                                                     9110 Strada Place
                                                     Naples, Florida  34108
                                                     Phone: (239) 390-1913
                                                     *kelley.price@dentons.com*

                                                     Kiran Patel (*pro hac vice*)
                                                     DENTONS US LLP
                                                     1221 Avenue of the Americas
                                                     New York, New York  10020
                                                     Phone: (212) 768-6700
                                                     *kiran.patel@dentons.com*

                                                     *Attorneys for Defendant Netflix, Inc., Ava DuVernay and Attica Locke*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 29, 2020, a true and correct copy of the foregoing was

served by CM/ECF on all counsel or parties of record on the service list.

*/s/ Natalie J. Spears*